COMMONWEALTH of Pennsylvania,
Appellant,

v.

Tamika Lynn JONES, Appellee.

Superior Court of Pennsylvania.

Submitted July 7, 2003.

Filed Feb. 10, 2004.

Reargument Denied April 21, 2004.

James P. Barker, Asst. Dist. Atty., Harrisburg, for Com., appellant.

Justin J. McShane, Harrisburg, for appellee.

BEFORE: JOYCE, MUSMANNO and CAVANAUGH, JJ:

OPINION BY MUSMANNO, J.:

¶ 1 The Commonwealth of Pennsylvania (the "Commonwealth") appeals from an Order entered on December 13, 2002, granting a suppression Motion filed by Appellee, Tamika Lynn Jones ("Jones"). We affirm.

¶ 2 The suppression court aptly summarized the underlying facts as follows:

[O]n June 7, 2002[, Officer Peter Rivera of the Harrisburg Police Department] was assigned to [the] daylight shift .... Although he was not certain of the time, Officer Rivera [believed that] sometime in the afternoon, he was notified by the dispatch center to respond to a call at the 1100 block of Hanover Street, Harrisburg, Dauphin County. According to the information provided by dispatch, a person had called in a complaint that a burgundy Chevrolet with license plate EJT 8020 was involved in drug activity. When Officer Rivera arrived at the 1100 block of Hanover Street, he observed a burgundy Chevrolet pulling away from the curb and immediately got behind it and determined that it was, in fact, the vehicle that had been described in the dispatch complaint. The vehicle stopped at a stop sign at the intersection of Thirteenth and Hanover Streets and, after proceeding through the intersection, pulled over to the curb. Officer Rivera stopped his marked police vehicle behind the Chevrolet, ... [but] the driver of the Chevrolet had stopped without Officer Rivera activating his lights or sirens.

After pulling to the side of the road, the driver, who has since been identified as [Jones], exited the vehicle. According to [Officer Rivera] ..., when [Jones] exited the vehicle, he was able to see that she had hundred dollar bills in her hand [and] he then activated his lights. Officer Rivera approached [Jones] and informed her that the police had received a call that a vehicle fitting the description of her burgundy Chevrolet and with her license plate number was involved in drug activity. [Jones] indicated that there were two other women in the vehicle and that one was smoking a blunt. Based upon his experience as a police officer, Officer Rivera [knew that] a "blunt" is a marijuana cigar or cigarette.... [I]mmediately upon approaching the vehicle, [Officer Rivera] could smell marijuana. When Officer Rivera asked whether there were any more drugs in the vehicle, [Jones] denied it and agreed to allow him to search the vehicle. Officer Rivera had all of the occupants of the vehicle exit the vehicle and stand at the rear and he also re-

quested female back-up in case a body search of [Jones] and her female passengers became necessary. Officer Reigle, a female police officer arrived and searched [Jones], finding [crack cocaine] and related paraphernalia on her person.

[Officer Rivera's police report] regarding the incident, ... did not note the hundred-dollar bill that [Officer Rivera] claimed to have seen in [Jones's] hand as she exited the vehicle. Moreover, at no time did he see any activity such as hand-to-hand transactions, to confirm drug activity. Finally, Officer Rivera agreed that he did not initiate a traffic stop, but rather, [Jones] stopped on her own accord.... [W]hen [Officer Rivera] received the information from dispatch, he knew nothing as to the name or reliability of the person who had called in the complaint. He was not certain whether the complaint had included the gender of the people in the vehicle. The only information that Officer Rivera had received was a description of the car and the license plate. After returning to the station, however, Officer Rivera determined that a person named Roy Davenport had called in the complaint and Officer Rivera later called Mr. Davenport to talk to him about the incident. Officer Rivera ... never used Mr. Davenport as a confidential informant, [nor had he ever] met him [nor spoke] to [Mr. Davenport] before this incident.

Trial Court Opinion, 2/12/03, at 1–3. Jones was charged with possession with intent to deliver a controlled substance and possession of drug paraphernalia.[1]

¶ 3 Jones filed an Omnibus Pre-trial Motion on October 30, 2002, which sought to suppress all evidence secured as a result of the above-described stop. A hearing was held before the Honorable Bruce F. Batton on December 13, 2002, at which time he granted Jones's Motion. The Commonwealth subsequently filed a timely Notice of appeal.[2]

¶ 4 On appeal, the Commonwealth sets forth two issues:

A. Did the trial court err by *sua sponte* imposing upon the Commonwealth the burden of proof relating to an issue not raised by [Jones] in her Motion to suppress?

B. Did the trial court err by granting [Jones's] Motion to suppress, which was based [upon] an allegation that the police had not corroborated an anonymous tip, when the Commonwealth proved that the tip was not anonymous and the law under both the Pennsylvania Constitution and the Constitution of the United States is clear that police officers may rely [upon] information provided by an identified citizen?

Brief of Appellant, at 4. The two issues presented by the Commonwealth are intertwined and can be broken down into three distinct claims: (1) whether Jones properly objected to the evidence at issue upon any basis other than that the evidence was provided by an anonymous informant; (2) if Jones did object on a basis other than that of an anonymous informant, whether the fact that the informant was identified was sufficient to justify Officer Rivera's

---

1. 35 Pa.C.S.A. §§ 780–113(a)(30) and (32).

2. We note preliminarily that this appeal is properly before us pursuant to Pennsylvania Rule of Appellate Procedure 311(d), which provides that "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certified in the notice of appeal that the order will terminate or substantially handicap the prosecution." The Commonwealth has complied with this procedural requirement and this appeal is properly before us.

reasonable suspicion of criminal activity; and (3) whether the trial court erred in placing the burden upon the Commonwealth.

¶ 5 Before we begin our analysis, we are mindful of our standard of review:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Keller,* 823 A.2d 1004, 1008 (Pa.Super.2003).

¶ 6 The threshold argument raised by the Commonwealth is that the trial court erred in granting the Motion to suppress, as Jones's Motion was limited to the context of an anonymous informant. It is the Commonwealth's position that Jones waived any argument beyond the anonymity of the tipster, by failing to object on any other basis. Therefore, the Commonwealth contends that the trial court erred in granting the Motion to suppress as it established that the tip at issue was not anonymous.

¶ 7 In support of this argument, the Commonwealth points to the title of the relevant section of Jones's Omnibus Pre-trial Motion: "Motion to Suppress Evidence, To Wit: Any and All Evidence Accumulated in this Case that was Subject

to the Unlawful Vehicle Stop Predicated upon an Anonymous Tip [Without] Sufficient Reliability." Omnibus Pretrial Motion, 10/30/02, at 2. We disagree with the Commonwealth's position. Jones specifically stated in her Omnibus Pre-trial Motion:

It is believed, and therefore averred, that the vehicle stop in this matter was unlawful because no Vehicle Code violation or Crimes Code violation was observed by the police officer and therefore no probable cause for the vehicle stop was in place. The sole and only reason for the stop was [ ] an anonymous tip absent [ ] any indicia of reliability and not corroborated by independent officer observation. Further, the description of the vehicle involved, as well as the person, was insufficient in detail as well.

*Id.* at 2–3. While we agree that Jones could have framed the issues more artfully, Jones included enough detail in her Motion to suppress to preserve an objection to the evidence on the basis that Officer Rivera did not have a reasonable suspicion sufficient to justify detention of Jones.

¶ 8 The Commonwealth premises its next argument upon the position that, because the informant's identity was known, the information provided by the informant was reliable and, by itself, could serve as the sole basis for a reasonable suspicion.[3] In analyzing this issue, this Court has stated:

To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including "tips" from citizens. Naturally, if a tip has a relatively low de-

---

**3.** We note that the Commonwealth conceded that a seizure of Jones occurred. Brief for

Appellant, at 14.

gree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable

*Commonwealth v. Swartz,* 787 A.2d 1021, 1024–25 (Pa.Super.2001) (*en banc*) (citations omitted).

¶ 9 Here the Commonwealth points out that the police dispatcher knew the name of the informant. However, knowledge of the name of an individual who provides the police with information alone is not sufficient to serve as a basis to detain a citizen. Regardless of the fact that the police knew the name of the individual who provided the tip, the information provided to the police was insufficient to serve as a basis for reasonable suspicion to justify the detention of Jones. The knowledge of the identity of the individual who provided the information to the police may, in certain circumstances, serve as a basis to presume the reliability and trustworthiness of the information provided by the individual. *See Commonwealth v. Waltson,* 703 A.2d 518, 522 (Pa.Super.1997), affirmed, 555 Pa. 223, 724 A.2d 289 (1998) (where an eyewitness to a crime voluntarily provides a tip that potentially implicates herself in criminal activity, reveals her name and consents to its inclusion on an affidavit in support of probable cause to issue a search warrant, her reliability and trustworthiness may be presumed). However, the knowledge of the identity of the individual by itself does not render the underlying information sufficient to justify the detention.

¶ 10 Upon review of the record, we conclude that the content of the information possessed by Officer Rivera was insufficient to serve as his basis for a reason-

able suspicion of criminal activity. When Officer Rivera stopped Jones, he only knew that an individual complained that a vehicle matching the description of Jones's vehicle and license plate number was involved in "drug activity." [4] Officer Rivera did not observe any conduct by Jones that would corroborate the tip provided to the dispatcher. N.T., 12/12/02, at 10–12.

¶ 11 We note that Officer Rivera testified at the suppression hearing that he observed "one-hundred-dollar bills" in Jones's hand when he activated his vehicle's lights. *Id.* at 5–6. However, the trial court did not believe that Officer Rivera would be able to see one-hundred-dollar bills in Jones's hand from his vehicle. This, coupled with the fact that Officer Rivera omitted this material fact, *i.e.,* that he observed one-hundred-dollar bills in Jones's hand, from his report, caused the trial court to find this testimony to be incredible. Trial Court Opinion, 2/12/02, at 6.

¶ 12 When a trial court makes a determination with regard to the credibility of certain testimony, we must accept that finding where the record supports it. *Keller,* 823 A.2d at 1008. In this case, the record supports the trial court's determination of Officer Rivera's credibility regarding this point. Officer Rivera testified that when Jones stopped the vehicle, she *started* to exit the vehicle. It was at this point that Officer Rivera allegedly saw the one-hundred-dollar bills in her hand when he activated his vehicle's lights. N.T., 12/12/02, at 6. However, Officer Rivera omitted the observation of the one-hundred-dollar bills from his police report. *Id.* at 9. Furthermore, the record does not establish that the money allegedly observed by Officer Rivera was actually

4. The information provided to Officer Rivera was that "the vehicle" was involved in an "Act 64 violation." N.T., 12/13/02, at 4.

found in the vehicle or on Jones's person when either was searched.

¶ 13 In addition, the information provided by Mr. Davenport did not contain sufficient specificity to justify the detention of Jones. As noted above, Mr. Davenport did not provide any information or description regarding the individual(s) who were allegedly engaged in the "drug activity." Nor did Mr. Davenport specify what the "activity" was. Officer Rivera did not know what "drug activity" was involved, or the identity, gender, race or number of individuals involved in the alleged activity. N.T., 12/12/02, at 10–12. Consequently, this information cannot form the basis of a reasonable suspicion to support the detention of Jones.

¶ 14 The final issue raised by the Commonwealth is whether the trial court erred in requiring the Commonwealth to produce evidence that Officer Rivera's stop of Jones was supported by reasonable suspicion. The Commonwealth argues that it did not have notice prior to the suppression hearing that the court would address the issue of reasonable suspicion. Consequently, the Commonwealth contends that it should have been given the opportunity to call Roy Davenport to establish the existence of reasonable suspicion.[5] We find that this claim lacks merit. As discussed above, we conclude that Jones did raise this issue in her omnibus pre-trial Motion.[6] Furthermore, Mr. Davenport's testimony would not satisfy the Commonwealth's burden, as Jones did not contest the content of the information provided, but rather whether the information itself was sufficient to serve as a basis for rea-

sonable suspicion. Moreover, while the Commonwealth contends that it was unprepared to present witnesses beyond the scope of whether the tip was anonymous, the record reflects that the Commonwealth was prepared to address issues regarding the actual search of Jones through the testimony of Officer Reigle. Accordingly, we find no merit to the Commonwealth's claim.

¶ 15 Order affirmed.

¶ 16 JOYCE, J., files a Dissenting Opinion.

### DISSENTING OPINION BY JOYCE, J.:

¶ 1 I disagree with the conclusion by the majority that both the content of the information possessed by Officer Peter Rivera and its degree of reliability were insufficient to serve as his basis for reasonable suspicion.

¶ 2 The Commonwealth concedes that the interaction between Officer Rivera and Appellee, Tamika Jones, was an investigative detention. Thus our inquiry must focus on whether the officer can point to specific and articulable facts that, in combination with any reasonable inferences arising from those facts, give rise to a reasonable suspicion of criminal activity.

¶ 3 Following the dictates of the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Pennsylvania Courts have recognized that under limited circumstances, police officers are justified in investigating a situation and may conduct brief, investiga-

---

5. While the Commonwealth framed this issue as one of burden of proof, it did not argue that the Commonwealth did not bear the burden of proof where the defendant raised the issue. Rather the Commonwealth argues that it was the defendant's burden to raise the issue in the first instance, a burden that the

Commonwealth claims was not satisfied. Brief for Appellant, at 18–20.

6. We further note that attached to Jones's omnibus pre-trial Motion was a proposed Rule to show cause.

tory detentions of individuals, so long as the police officers reasonably believe that criminal activity may be afoot. *Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673 (1999); *In re C.C.J.*, 799 A.2d 116 (Pa.Super.2002). In ascertaining the existence of reasonable suspicion, we must look to the totality of the circumstances. *Commonwealth v. Riley*, 715 A.2d 1131, 1135 (Pa.Super.1998). In order to establish reasonable suspicion, a police officer must point to articulable facts and reasonable inferences drawn from those facts in light of the officer's experience. *Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571 (1997). A law enforcement officer who "lacks the precise level of information necessary for probable cause to arrest" but possesses reasonable suspicion of criminal activity, is not required "to simply shrug his shoulders and allow...a criminal to escape." *Commonwealth v. Lagamba*, 418 Pa.Super. 1, 613 A.2d 1, 5 (1992). Also, "[m]erely because a suspect's activity may be consistent with innocent behavior does not alone make detention and limited investigation illegal." *In re C.C.J.*, 799 A.2d at 121.

¶ 4 With respect to reasonable suspicion, our courts have recognized that "[t]o have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens. *Commonwealth v. Wright*, 448 Pa.Super. 621, 630, 672 A.2d 826, 830 (1996)." *Commonwealth v. Swartz*, 787 A.2d 1021, 1024 (Pa.Super.2001) (*en banc*). *See Commonwealth v. Cullen*, 340 Pa.Super. 233, 489 A.2d 929, 937 (1985) (the investigating officer need not have personal knowledge of the facts which support probable cause for arrest. The officer may reasonably rely upon radio transmissions so long as the officer issuing the information has received reasonably trustworthy information sufficient to warrant a man of reasonable caution in believing that the suspect has committed or is committing an offense). *See also Commonwealth v. Janiak*, 368 Pa.Super. 626, 534 A.2d 833 (1987) (allowing the police to make a stop of an individual suspected of intoxication based upon radio information, although the police had not personally observed unusual or criminal conduct).

¶ 5 On the issue of the source and reliability of the police officer's information, this Court has opined as follows:

When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular suspicion. However, a tip from an informer known to the police may carry enough indicia of reliability for the police to conduct an investigatory stop, even though the same tip from an anonymous informant would likely not have done so. Indeed, a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk.

*Swartz*, 787 A.2d at 1024 –1025 (citations omitted). The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. *Commonwealth v. Allen*, 555 Pa. 522, 725 A.2d 737 (1999). To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. *Id.*

¶ 6 Herein, the information supplied to Officer Rivera came from an identified informant. This indicates a high degree of reliability. *See Swartz, supra.* The information provided was sufficiently specific. The information indicated the make and color of the vehicle: a burgundy Chevrolet; and it provided the vehicle registration number (EJT 8020). The informant pro-

vided information about the occupants of the vehicle: it indicated that multiple individuals were occupying the vehicle. The information also described the conduct of the occupants, that is, that they were engaged in drug activity. The information indicated the approximate location of the vehicle and its occupants (at the 1100 block of Hanover Street, Harrisburg, Dauphin County).

¶ 7 It is important to note that prior to the investigatory stop, Officer Rivera was able to corroborate some of the information provided by the informant. The officer found the vehicle described by the informant (a burgundy Chevrolet with the registration number EJT 8020); the officer found the vehicle in the area described by the informant (at the 1100 block of Hanover Street, Harrisburg). Also, Officer Rivera noticed that the vehicle had two occupants: the informant indicated that the vehicle had multiple occupants. Under these circumstances, Officer Rivera was justified in investigating further to determine whether the occupants of the vehicle were engaged in drug activity as the informant alleged.

¶ 8 The above conclusion is quite consistent with *Commonwealth v. Korenkiewicz,* 743 A.2d 958 (Pa.Super.1999) (*en banc*), *appeal denied,* 563 Pa. 659, 759 A.2d 383 (2000). In *Korenkiewicz,* the information available to the police officer was provided by an identified source, Kenneth Pingerton. In his call to the police, Pingerton reported that a suspicious person in a dark colored convertible was parked at his Amoco service station. According to Pingerton, the driver of the vehicle appeared ill or intoxicated and was about to pull out onto the road. When the police officer arrived, he saw a vehicle matching the description in the report at the exact location provided by Pingerton. Without observing any criminal or unusual activity, the police officer initiated an investigatory stop based on Pingerton's report. On appeal we upheld the validity of this stop and held that the police officer was constitutionally authorized to execute a brief investigatory stop.

¶ 9 In *Commonwealth v. Lohr,* 715 A.2d 459 (Pa.Super.1998), an identified citizen caller reported that she observed a red and white Ford Bronco being driven erratically into the parking lot of a supermarket. The police officer proceeded to the scene where he observed the appellant operating a red and white Bronco as it began to back out of the parking space. Based on the dispatch message derived from the citizen's telephone call, the police officer initiated a traffic stop. *Id.* at 460. On appeal, we held that based on the circumstances and on the fact that the police officer saw the described vehicle in the described location, the totality of information justified the brief investigative stop. *Id.* at 462.

¶ 10 In *Janiak, supra,* two police officers received radio communications that an individual had been reported in an intoxicated condition near gas pumps at a convenience store which was located one long block to the south and a long block to the west of the officers' location. The communication indicated that the individual was about to drive away. *Janiak,* 534 A.2d at 833. The officers then received a second telecommunication that the individual was now driving in an easterly direction on West Third Street in Williamsport. The police officers later saw the appellant's vehicle proceeding in an easterly direction toward the officers and initiated a traffic stop based on the radio communications. *Id.* at 834. Prior to the stop, the police officers did not observe any unusual or criminal behavior on the part of the appellant. The only observation that they made with respect to the

manner of operation of the vehicle was that it was proceeding at 15 to 20 miles per hour. The police officers indicated that their decision to initiate the stop was based on the report that an intoxicated individual was operating the vehicle, and their belief under all of the circumstances that the vehicle could only be the one in question. *Id.* On appeal, we found that the police officers acted with reasonable suspicion and possessed specific and articulable facts which warranted the stop of the appellant's automobile. *Id.* at 835.

¶ 11 In *Commonwealth v. Ogborne,* 410 Pa.Super. 164, 599 A.2d 656 (1991), we held that a confidential informant's tip to a police officer that the appellant would arrive at his home in his car within a few hours and carrying bundles of PCP exhibited sufficient indicia of reliability to justify an investigatory stop of the appellant in the driveway of his home when defendant arrived at his home in his car several hours after the officer received the tip. In reaching the above conclusion, we noted that the police officer received specific information from a reliable informant with personal knowledge of the appellant's return time to his home in Delaware County from Philadelphia; that the informant described the specific make and model of the automobile; that the informant stated that the appellant would be carrying bundles of PCP; and that the police officer's subsequent investigation corroborated much of this information. *Id.* at 659. Significantly, we observed that:

> [B]ecause an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity. Thus, it is not unreasonable to conclude ... that the independent corroboration by the police of significant aspects of the informer's predictions imparted some

degree of reliability to the other allegations made by the caller.

*Id.* at 659 (citation omitted; alteration in original).

¶ 12 Based on the foregoing discussion and the cases cited above, I would conclude that in the instant case, Officer Rivera was justified in conducting the investigative detention of Jones based on the information provided by the identified citizen informant. Accordingly, I respectfully dissent.