**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**William Joseph ANTHONY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 1, 2009.

Filed July 13, 2009.

Patrick M. Casey, Butler, for appellant.

Patricia J. McLean, Asst. Dist. Atty., Butler, for the Com., appellee.

BEFORE: FORD ELLIOTT, P.J., ALLEN and POPOVICH, JJ.

OPINION BY ALLEN, J.:

¶ 1 William Joseph Anthony (Appellant) appeals *nunc pro tunc* from the judgment of sentence entered upon his conviction of driving under the influence of alcohol (DUI). 75 Pa.C.S.A. § 3802. Appellant maintains that the trial court erred in denying his motion to suppress because the police officer lacked probable cause or reasonable suspicion to effectuate a traffic stop. We affirm.

¶ 2 At the suppression hearing, Officer Cheryl Litz of the Butler County Police Department testified that she received a dispatch relating to a 911 call from a named citizen, Felix Rosario, who stated that he was following a dark blue Buick. Officer Litz testified that dispatch informed her Rosario believed the driver of the Buick was DUI because he observed the driver almost strike the wall of a bridge, run a stop sign and drive onto a sidewalk. The dispatcher, relaying Rosario's statements, provided Officer Litz with the registration number and location of the Buick. Officer Litz testified that, consistent with the information she received from dispatch, she observed the Buick traveling west on Wayne Street in the City of Butler, and turn south on Jackson Avenue. According to Officer Litz, she observed Rosario's vehicle following the Buick, and she initiated a traffic stop of the Buick. Officer Litz testified that she did not observe the Buick violate any provision of the motor vehicle code, but instead, relied upon the information provided to her through dispatch via Rosario. Once Officer Litz stopped Appellant's vehicle, Rosario exited his car and met with Officer Litz, whereby Officer Litz interviewed Rosario. After briefly observing Appellant's conduct, Officer Litz arrested Appellant on the belief that he was DUI. Subsequent testing revealed that Appellant's blood alcohol level exceeded .16%.

¶ 3 The Commonwealth charged Appellant with DUI. Appellant's counsel filed an omnibus pre-trial motion to suppress, contesting the legality of the traffic stop. The trial court denied Appellant's motion to suppress, and the case proceeded to a bench trial. On August 29, 2006, the trial court found Appellant guilty of DUI. By order dated September 27, 2006, the trial court sentenced Appellant to six months of intermediate punishment and a fine of $1,000.

¶ 4 On October 24, 2006, Appellant filed a notice of appeal. The trial court issued an order on October 25, 2006, directing Appellant to file a Pa.R.A.P. 1925(b) statement within 14 days. Appellant, in turn, filed his statement approximately nineteen days later on November 13, 2006. On appeal, this Court found that all of Appellant's assignments of error were waived due to the fact that he filed an untimely Pa.R.A.P. 1925(b) statement, and our Supreme Court denied allowance of appeal. *Commonwealth v. Anthony*, 943 A.2d 307 (Pa.Super.2007), *appeal denied by* 597 Pa. 709, 951 A.2d 1159 (2008).

¶ 5 On July 31, 2008, Appellant filed a petition under the Post–Conviction Relief Act (PCRA), alleging that his appellate counsel was ineffective for failing to file a timely Pa.R.A.P. 1925(b) statement. On October 14, 2008, the trial court reinstated Appellant's direct appeal rights and ordered Appellant to file a notice of appeal within thirty days. Appellant, on November 10, 2008, filed a timely notice of appeal to this Court. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

¶ 6 Appellant raises the following issue for our review:

1. Did the Trial Court commit an error of law when it denied Appellant's Omnibus Pre–Trial Motion to Suppress and determined the stop of the Appellant's vehicle, by Officer Cheryl Litz of the Butler City Police Department, did not violate Article One Section 8 of the Constitution of the Commonwealth of Pennsylvania and the Fourth and Fourteenth Amendments of the United States Constitution or Section 6308 of the Pennsylvania Motor Vehicle Code?

Brief for Appellant at 7.

¶ 7 An appellate court's scope and standard of review of an order denying a suppression motion is well established.

[W]e may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Russo,* 594 Pa. 119, 934 A.2d 1199, 1203 (2007) (citation omitted). "An appellate court, of course, is not bound by the suppression court's conclusions of law." *Id.* However, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Dutrieville,* 932 A.2d 240, 242 (Pa.Super.2007) (citation omitted).

¶ 8 Pursuant to 75 Pa.C.S.A. § 6308(a) and (b), an officer may conduct an investigatory detention if he/she has reasonable suspicion to believe that a motorist violated a provision of the motor vehicle code:

§ 6308. Investigation by police officers

**(a) Duty of operator or pedestrian.**— The operator of any vehicle or any pedestrian reasonably believed to have violated any provision of this title shall stop upon request or signal of any police officer and shall, upon request, exhibit a registration card, driver's license and information relating to financial responsibility, or other means of identification if a pedestrian or driver of a pedalcycle, and shall write their name in the presence of the police officer if so required for the purpose of establishing identity.

**(b) Authority of police officer.**— Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the drivers license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(a) and (b).

¶ 9 As part of his sole issue, Appellant initially argues that the trial court erred in denying his motion to suppress because it erroneously applied a reasonable suspicion standard instead of a probable cause standard to determine whether the traffic stop was justified. Brief for Appellant at 13–22. In advancing his argument, Appellant acknowledges that in *Commonwealth v. Chase,* 599 Pa. 80, 960 A.2d 108 (2008), our Supreme Court upheld the constitutionality of 75 Pa.C.S.A. § 6308's reasonable suspicion standard under both the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution. *Id.* at 22. Ap-

pellant, however, argues that "it is clear that if an officer does not have expectations that a stop will lead to discovery of additional information of criminal activity, then probable cause is still the appropriate standard to evaluate said traffic stop." *Id.* (citing *Chase,* 960 A.2d at 115 ("[I]f the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion.... If *Terry* allows an investigatory stop based on reasonable suspicion, there must be something to investigate.")). We find that Appellant is not entitled to relief.

¶ 10 Here, Appellant's erratic driving not only served to provide Officer Litz with a basis upon which to stop Appellant's vehicle, but it also gave her grounds upon which to further investigate a suspected DUI violation. In *Chase,* our Supreme Court stated:

> In [*Commonwealth v. Whitmyer,* 542 Pa. 545, 668 A.2d 1113 (1995),] we reviewed a vehicle stop and stated:
>
>> We note that this is not a case where further investigation would lead to a discovery of a violation of the Vehicle Code. If the trooper was unable to clock Appellee for three-tenths of a mile or observe the conditions that would warrant a citation for driving at an unsafe speed, there is no further evidence that could be obtained from a subsequent stop and investigation.
>
> *Whitmyer,* 668 A.2d at 1118. The Superior Court recently followed similar logic:
>
>> [I]t is hard to imagine that an officer following a vehicle whose driver is suspected of driving at an unsafe speed would discover anything further from a stop and investigation. Similarly, if an officer observes a driver run a red light or drive the wrong way on a one-way street, the officer either

does or does not have probable cause to believe there has been a violation of the Vehicle Code. A subsequent stop of the vehicle is not likely to yield any more evidence to aid in the officer's determination.

*Commonwealth v. Sands,* 887 A.2d at 261, 270 (Pa.Super.2005). This logic is correct. If *Terry* allows an investigatory stop based on reasonable suspicion, there must be something to investigate. *Sands* distinguished a vehicle stop for suspected DUI, noting that such a stop was "a scenario where further investigation almost invariably leads to the most incriminating type of evidence, i.e., strong odor of alcohol, slurred speech, and blood shot eyes. This type of evidence can only be obtained by a stop and investigation." *Id.* This is correct—when the existence of reasonable suspicion combines with the expectation that the stop will allow light to be shed on the relevant matters, the stop is not unconstitutional.

*Chase,* 960 A.2d at 115 (emphasis added).

¶ 11 Just as in *Chase* and *Commonwealth v. Sands,* 887 A.2d 261 (Pa.Super.2005), Officer Litz initiated a traffic stop, albeit through information concerning Appellant's erratic driving, in order to investigate whether Appellant was DUI. Accordingly, in this scenario, a reasonable suspicion standard is both applicable and constitutional. *See Chase,* 960 A.2d at 115 ("When the existence of reasonable suspicion combines with the expectation that the stop will allow light to be shed on the relevant matters, the stop is not unconstitutional."). The trial court, therefore, did not err in utilizing a reasonable suspicion standard to evaluate the validity of the traffic stop in this case.

■ ¶ 12 Appellant alternatively argues that the trial court committed an error of law in concluding that Rosario's tip provid-

ed Officer Litz with the reasonable suspicion necessary to conduct an investigatory detention. Brief for Appellant at 23–28. Relying primarily on *Commonwealth v. Jones,* 845 A.2d 821 (Pa.Super.2004), Appellant emphasizes that Officer Litz did not personally observe a motor vehicle code violation and asserts that Rosario, a named-citizen informant, provided nonspecific and inadequate information to sustain a finding of reasonable suspicion. *Id.* at 36–38. We disagree.

¶ 13 "To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including tips from citizens." *Commonwealth v. Swartz,* 787 A.2d 1021, 1024 (Pa.Super.2001) *(en banc)* (citation omitted). "Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk." *Commonwealth v. Barber,* 889 A.2d 587, 593 (Pa.Super.2005). Similarly, "Pennsylvania law ... permits a vehicle stop based upon a radio bulletin if evidence is offered at the suppression hearing to establish reasonable suspicion." *Id.* at 594.

> [F]or a stop to be valid, someone in the police department must possess sufficient information to give rise to reasonable suspicion. The officer with the reasonable suspicion, usually the dispatcher, need not convey all of this background information to the officer who actually effectuates the stop. Thus, the police may justify the search by presenting sufficient evidence at the suppression hearing that someone in the chain of command had reasonable suspicion before the stop, even if the arresting officer did not.

*Id.* (citation omitted).

¶ 14 In assessing whether reasonable suspicion is present, this Court has stated:

> A police officer is justified in conducting a stop of a person if the officer can point to specific facts which create a reasonable suspicion that the person is involved in criminal activity. To determine whether reasonable suspicion exists, a court must examine several factors, including the informant's reliability, veracity, and basis of knowledge, as well as whether the information supplied to the police contained 'specific and articulable facts' that would lead the police to believe that criminal activity may be afoot. Both quantity and quality of information are to be considered when assessing whether a stop is justified.

*Commonwealth v. Albert,* 767 A.2d 549, 552 (Pa.Super.2001) (citations omitted).

¶ 15 Here, the dispatcher, via 911, received information provided by Rosario, a named citizen informant. Rosario stated that he was following a dark blue Buick, and observed that the driver almost struck a bridge on South Monroe Street, ran a stop sign at the intersection of Center and McKean Street, and then drove onto a sidewalk. In addition, Rosario stated that he believed the driver was DUI and gave the location and registration number of the Buick. Within minutes of receiving the dispatch report, Officer Litz arrived at the reported location, observed a dark blue Buick, and verified that its general location and registration number matched that given by dispatch. Upon observing the Buick, Officer Litz noticed Rosario's vehicle following Appellant, and Officer Litz

interviewed Rosario after she arrested Appellant. Given these circumstances, we conclude that Rosario's tip, transmitted through dispatch, sufficed to provide Officer Litz with reasonable suspicion to believe that Appellant violated the Motor Vehicle Code. *Commonwealth v. Krisko*, 884 A.2d 296, 301 (Pa.Super.2005) ("Here, the Smiths identified themselves to the 911 dispatcher, gave a continuing and detailed report of Appellee's most troubling manner of driving, and moments later personally met with responding officers and directed them to where Appellee had just parked her car. We conclude that the Smiths' high degree of accountability and their detailed, first-hand report of Appellee's very hazardous driving furnished Officer Beighley with the requisite reasonable suspicion to conduct an investigative detention of Appellee."); *see also Commonwealth v. Korenkiewicz*, 743 A.2d 958, 964–65 (Pa.Super.1999) *(en banc)*.

¶ 16 In this case, Rosario's tip provided detailed and specific information to dispatch, and the record demonstrates that Rosario personally observed Appellant's erratic driving in an ongoing manner. These significant factors were not present in *Jones*, and, thus, we find that *Jones* is factually inapposite. *Cf. Jones*, 845 A.2d at 825–26 (finding that officer lacked reasonable suspicion where named citizen informant called dispatch and issued a general complaint that unidentified people in a burgundy car on the 1100 block of Hanover Street were "involved in drugs"; there was nothing in the record to confirm that the informant observed the criminal activity firsthand). As a result, Appellant's reliance on *Jones* is misplaced, and we conclude that the trial court did not err in finding that Officer Litz possessed reasonable suspicion to stop Appellant's vehicle and conduct an investigatory detention.

For these reasons, we affirm the judgment of sentence.

¶ 17 Judgment of sentence affirmed.