J-S02035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID MATTHEW TRES | : | |
| | : | |
| Appellant | : | No. 1297 EDA 2018 |

Appeal from the PCRA Order March 19, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004624-2016

BEFORE: GANTMAN, P.J.E., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

CONCURRING MEMORANDUM BY KUNSELMAN, J.: **FILED APRIL 09, 2019**

The majority affirms this PCRA appeal based on the well-reasoned opinion of the PCRA court. I concur with this decision. I write separately to specifically address Tres' argument that his plea counsel was ineffective based on this Court's decision in **Commonwealth v. Jones**, 845 A.2d 821 (Pa. Super. 2004).

Both of Tres' claims on appeal allege the ineffective assistance of counsel in relation to the entry of his guilty plea. As this Court has summarized:

> A criminal defendant has the right to effective counsel during a plea process as well as during trial. A defendant is permitted to withdraw his guilty plea under the PCRA if ineffective assistance caused the defendant to enter an involuntary plea[.]
>
> We conduct our review of such a claim in accordance with the three-pronged ineffectiveness test under section 9543(a)(2)(ii) of the PCRA. The voluntariness of the plea

depends on whether counsel's advice was within the range
of competence demanded of attorneys in criminal cases.

***Commonwealth v. Orlando***, 156 A.3d 1274, 1280 (Pa. Super. 2017) (citations omitted).

In addressing Tres' claims, the PCRA court addressed the issue as if it were a direct challenge to the voluntariness of his plea, rather than a challenge to the advice given by plea counsel. The PCRA court rejected Tres' ineffectiveness claim only after engaging in an analysis of the statements made by Tres during the plea colloquy. The Majority, by adopting the PCRA court's reasoning, likewise does not address Tres' actual claim of ineffectiveness.

Tres believes his lawyer was ineffective for advising him to take a plea instead of proceeding with a suppression motion based on an illegal stop. To support his claim, he relies solely on our decision in ***Jones***, ***supra***. He believes this case conclusively renders his stop and the subsequent pat-down for weapons illegal, and that his attorney should have known about the ***Jones*** case and given him better advice.

Tres is mistaken. The facts of his case are significantly different from ***Jones***, and as such, the suppression court would likely have denied his suppression motion.

In ***Jones****,* a panel of this Court concluded that, although the police knew the name of the informant, such information alone was insufficient to serve as a basis for a stop. ***Id.*** at 825. Specifically, the panel concluded that the

identity of the tipster alone was insufficient in light of the content of the information provided by the tipster to the police. *Id.* That is, the only information provided by the identified tipster was a description of a vehicle at a certain location which was allegedly "involved in drug activity." *Id.* Without a more detailed explanation of the person and activity at issue, the panel concluded that the police did not have reasonable suspicion to stop the driver. *Id.* at 826. Specifically, the panel stated the officer "did not know what 'drug activity' was involved, or the identity, gender, race or number of individuals involved in the alleged activity." *Id.* at 826. Consequently, this tip did not contain sufficient specificity to justify the detention.

However, we noted in *Jones* that the knowledge of the identity of the caller who provided information to the police, may in certain circumstances, serve as a basis to presume the reliability and trustworthiness of the information provided by the individual. *Id*. at 825.

Since *Jones*, we have observed that "identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk." *Commonwealth v. Barber,* 889 A.2d 587, 593 (Pa. Super. 2005). Similarly, "Pennsylvania law ... permits a vehicle stop based upon a radio bulletin if evidence is offered at the suppression hearing to establish reasonable suspicion." *Id.* at 594.

> [F]or a stop to be valid, someone in the police department must possess sufficient information to give rise to reasonable suspicion. The officer with the reasonable suspicion, usually the dispatcher, need not convey all of this background information to the officer who actually effectuates the stop. Thus, the police may justify the search by presenting sufficient evidence at the suppression hearing that someone in the chain of command had reasonable suspicion before the stop, even if the arresting officer did not.

*Id*. (citation omitted). *See also Commonwealth v. Anthony*, 977 A.2d 1182, 1186–87 (Pa. Super. 2009).

Here, in addition to the caller being identified, unlike in *Jones,* the caller gave a specific description of the vehicle, driver, and activity at issue. The caller identified a white male in a black hooded sweatshirt riding a motor scooter displaying a gun. Therefore, the suppression court could have found this information was sufficiently specific and reliable to give Officer Garay reasonable suspicion to stop Tres on his scooter. Moreover, the officer observed Tres commit a motor vehicle violation on the scooter, i.e. an unlit headlamp, which also justified the stop. Additionally, the pat-down was further warranted when Tres disobeyed the officer's command not to dismount the scooter; since he got off of the scooter, in direct contravention of the officer's order, this arguably gave the officer authority to conduct the pat-down for officer safety. *See e.g. Commonwealth v. Mack*, 953 A.2d 587 (Pa. Super. 2008).

Based on the totality of the circumstances here, Tres likely would have lost his suppression motion. *See Barber*, *supra* and *Anthony, supra*. His attorney advised him of this likelihood in the letter of October 10, 2016.

In addition to the unlikely success of the suppression motion, had Tres pursued suppression, the negotiated plea offer of 3 and ½ years of incarceration would have been withdrawn. If convicted, Tres faced 5 years for the gun charge and an additional 2 years for the theft charge, which the district attorney could request to run consecutively.[1] As such, Tres' attorney warned him, "When you consider all of this you have to conclude that you would be taking one hell of a risk." Letter dated 10/10/16. Further, his attorney told Tres the choice was up to him and also advised him to get a second opinion. Tres chose to voluntarily enter a plea.

In sum, Tres has failed to establish that plea counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." **_Orlando_**, **_supra_**. Thus, I agree with the Majority that because Tres' attorney did not render ineffective assistance of counsel, no PCRA evidentiary hearing was necessary and Tres' appellate issues merit no relief.

---

[1] During the oral colloquy, Tres was aware that he faced potential 10-20 years of incarceration if convicted on all of the charges against him.