J-S16017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAQUIL JONES | : | |
| | : | |
| Appellant | : | No. 1569 MDA 2021 |

Appeal from the Judgment of Sentence Entered November 4, 2021,
in the Court of Common Pleas of Berks County,
Criminal Division at No(s): CP-06-CR-0002349-2020.

BEFORE: PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED JULY 12, 2022**

Jaquil Jones appeals from the judgment of sentence entered following his jury trial and conviction of persons not to possess firearms, possession of drug paraphernalia, and conspiracy.[1] He challenges the denial of his motion to suppress evidence obtained during a warrantless search of his apartment. We affirm.

On July 15, 2020, Reading Police Officer Christopher Bucklin filed a criminal complaint charging Jones after a search of Jones' apartment revealed two firearms, accessories, drugs, money, and paraphernalia. Jones and K.R.,[2]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1), 35 P.S. § 780-113(a)(32), and 18 Pa.C.S.A. § 903(a)(1), respectively.

[2] We identify K.R. by initials based on the disposition of the case against her.

a woman who was in the apartment, moved to suppress evidence obtained during the search. The suppression court heard both motions at a virtual hearing on February 10, 2021. It found the following facts:

> [] Jones is under the supervision of the State Department of Probation and Parole and specifically supervised by State Parole Agent [Lori] Lynde. In mid-July [2020], Agent Lynde received a tip that . . . Jones was in possession of a firearm and two extended magazines for the firearm, that he may be dealing drugs, and had traveled to California recently without his parole agent's permission. This information was provided directly to the parole agent from the confidential source in mid-July and was based on firsthand knowledge.[3] It was decided to do a home visit and search of . . . Jones' approved residence. Permission to search the apartment was requested from and granted by Supervisor Nadeen DelVecchio in advance of the search.
>
> On July 15, 2020, various members of the Pennsylvania State Board of Probation and Parole went to the residence of . . . Jones . . . for an unannounced home visit. The intention of the state parole team was to search the residence. The team consisted of three parole agents, Justin Johnston, Lori Lynde and Jeff Zimmerman, as well as the supervisor who approved the search, Nadeen DelVecchio. Upon arrival of the state parole team, . . . Jones was placed in handcuffs.[4] [K.R.] was present in the home of . . . Jones and was not placed in handcuffs but was escorted from the residence into the stairwell area and subjected to a pat down search. [K.R.] was not a resident of the apartment but was a visitor. When she was taken out of the room, she attempted to take a box with her and was not permitted to do so. Supervisor DelVeccchio remained with [K.R.]

---

[3] To avoid revealing the informant's identity, the suppression court sustained the Commonwealth's objection to asking if the informant had been inside Jones' apartment to see the reported violations. N.T., 2/10/21, at 47–48.

[4] Agent Lynde testified that after she handcuffed Jones, Jones admitted to going to California without her written permission, which violated the terms and conditions of his parole. N.T., 2/10/21, at 35.

Agent Lynde found a grinder on the floor that was suspected drug paraphernalia. Agent Johnston searched a red backpack that was on the floor outside the closet. He was not aware of the owner of the backpack. The backpack was first lifted and based on the weight of the item, was opened where the agent found a loaded drum magazine, two loaded extended magazines and a gun case for a pistol. [K.R.] indicated the items in the backpack belonged to her. The state parole team stopped the search after having seen the contents of the backpack and contacted the Reading Police Department. Officer Christopher Bucklin arrived and determined that 'the' gun was legally purchased by [K.R.] and no charges regarding the items found in the backpack would be filed by the Reading Police Department. The items in the backpack specifically matched the items that the confidential informant had said would be found in the home.

Supervisor DelVecchio got continued approval from a supervisor to continue the search for drugs. The state parole team resumed their search. [K.R.] indicated that she had to go to work and needed her tote and purse. She did not give authorization or consent to search any of the items she said belonged to her. The agents indicated they needed to clear the room before she could go in and get herself together to go to work. [K.R.] specifically indicated the items she needed were the brown tote purse that was under a black bag and a pair of 'scrubs' on top sitting on the floor. The tote purse was clearly a woman's purse. Accordingly, Agent Lynde then searched those items.

Agent Lynde lifted the black bag and saw a large amount of banded U.S. currency and two plastic containers of what she believed to be marijuana in the open brown tote purse. The Reading Police officer was again summoned, and the vice unit was then contacted. Ultimately, Reading Police sought a search warrant based on the information provided by the state parole team, and their own observations of the evidence uncovered by the state parole team in their search of the tote purse of [K.R.] Pursuant to the Reading Police search warrant, two firearms, magazines, ammunition, over one thousand (1000) grams of methamphetamine, a small amount of marijuana, [over] $39,000 of US currency and packaging material were seized.

Suppression Court Opinion, 5/19/21, at 2–4 (footnotes omitted).

The suppression court first concluded that the informant's tip provided reasonable suspicion to allow parole agents to search Jones' apartment. With respect to K.R., the court concluded that it was improper to search her bags before letting her leave with them. The search warrant, based on this improper search, was tainted as to K.R. Therefore, the court granted K.R.'s motion to suppress.

With respect to Jones, however, the suppression court found that Jones did not have an expectation of privacy in K.R.'s items. Therefore, the warrant was not tainted against Jones. Even if it had been, the court found that parole agents would have inevitably discovered the evidence in Jones' apartment. Accordingly, the court denied Jones' motion to suppress.

Jones' case proceeded to trial, where a jury convicted him of persons not to possess firearms, possession of drug paraphernalia, and conspiracy to possess drug paraphernalia.[5] On November 4, 2021, the trial court imposed an aggregate sentence of 54 months to 10 years of incarceration. Jones did not file post-sentence motions. He timely appealed. Jones and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Jones raises the following issues:

A. Did Parole Officers lack the necessary reasonable suspicion to enter Appellant's apartment without a warrant or his consent where the information they relied and impetuously acted on came from a single hitherto-unknown informant whose tip was

---

[5] The jury acquitted Jones of possession with intent to deliver, possession of a controlled substance, and additional conspiracy charges.

- 4 -

uncorroborated by independent investigation or observation, and otherwise vague and conjectural?

B. Does the principle of "inevitable discovery" apply where the informant's tip was uncorroborated by independent investigation or observation, and there was no indication that the parole officers had any prior or other reason to enter Appellant's apartment, or that they would have applied for a warrant to do so, if it were not for this one defective tip?

C. Was the question of Appellant's expectation of privacy in his friend's bag irrelevant, as the initial non-consensual entry into and continued search of his apartment was illegal, and so Appellant had standing to suppress all the poisoned evidentiary fruits of the search?

Jones' Brief, at 4–5.

The following principles guide our review:

Appellate review of a suppression decision is limited to the suppression record, considering the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by the defense. This Court is bound by the facts as found by the suppression court so long as they are supported by the record, but our review of its legal conclusions is *de novo*.

*Commonwealth v. Lehnerd*, 273 A.3d 586, 589 (Pa. Super. 2022) (quoting

*Commonwealth v. Valdivia*, 195 A.3d 855, 861 (Pa. 2018)) (italics added).

Generally, police officers may not search a residence without a warrant supported by probable cause.  U.S. Const. amend. IV; Pa. Const. art. I, § 8. Because Jones was on state parole, his residence was subject to search by parole agents.  By statute, state parole agents are peace officers who have police power and authority to arrest state parolees for parole violations.  61

Pa.C.S.A. § 6152 (repealed).[6]  Parole agents may search the home of a

parolee on reasonable suspicion of a violation of parole.

In his first issue, Jones challenges the conclusion that parole agents had

reasonable suspicion to search his apartment.  The statute allowing a search

by a parole officer provides, in relevant part:

> **(b) Searches and seizures authorized.**--
>
> (1) Agents may search the person and property of offenders in accordance with the provisions of this section.
>
> (2) Nothing in this section shall be construed to permit searches or seizures in violation of the Constitution of the United States or section 8 of Article I of the Constitution of Pennsylvania.
>
> \*     \*     \*
>
> **(d) Grounds for personal search of offender.**--
>
> (1) A personal search of an offender may be conducted by an agent:
>
>> (i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision[.]
>
> \*     \*     \*
>
> (2) A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.
>
> \*     \*     \*
>
> (6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure

---

[6] 61 Pa.C.S.A. §§ 6152 and 6153, in effect at the time of the search of Jones' apartment, were repealed and replaced by 61 Pa.C.S.A. §§ 6181 and 6182. The former and current statutes are materially identical as applied to this case.

provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S.A. § 6153(b), (d) (repealed).[7]

Applying these statutes to warrantless searches of parolees, we have explained:

"[P]arolees agree to 'endure warrantless searches' based only on reasonable suspicion in exchange for their early release from prison." *Commonwealth v. Curry*, 900 A.2d 390, 394 (Pa. Super. 2006) (quoting *Commonwealth v. Appleby*, 856 A.2d 191, 195 (Pa. Super. 2004)). "[Parole] agents need not have probable cause to search a parolee or his property; instead, reasonable suspicion is sufficient to authorize a search." *Id.*

A search will be deemed reasonable "if the totality of the evidence demonstrates: (1) that the parole officer had a reasonable suspicion that the parolee had committed a parole violation, and (2) that the search was reasonably related to the parole officer's duty." *Commonwealth v. Gould*, 187 A.3d 927, 935 (Pa. Super. 2018). *See* 61 Pa.C.S. § 6153(d)(2) (grounds

_____

[7] The Commonwealth and the suppression court cite 42 Pa.C.S.A. § 9912, which applies to county probation officers and county offenders. *Id.* § 9912(b)(1). These statutes are otherwise identical in all relevant aspects.

for state parole agent's property search exist "if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.").

Parole officers may form reasonable suspicion based on personal observations and third-party information. ***Commonwealth v. Colon***, 31 A.3d 309, 315–16 (Pa. Super. 2011).

***Commonwealth v. Wright***, 255 A.3d 542, 549–50 (Pa. Super. 2021) (citation formatting altered).

Whether a parole agent has reasonable suspicion to search is an objective inquiry based on the totality of the circumstances "at the moment of the intrusion." ***Commonwealth v. Moore***, 805 A.2d 616, 619–20 (Pa. Super. 2002) (brackets and citations omitted).

A tip from an informant may provide reasonable suspicion if the officer verifies the informant's reliability. ***Id.*** at 621; ***see*** 61 Pa.C.S.A. § 6153(d)(6)(ii) (repealed, now 61 Pa.C.S.A. § 6182(d)(4)(ii)) (permitting consideration of "[i]nformation provided by others"). Relevant factors in assessing an informant's tip include "the veracity of the informant, the reliability of the information, and the informant's basis of knowledge." ***Commonwealth v. Griffin***, 954 A.2d 648, 651 (Pa. Super. 2008) (assessing whether a tip provided reasonable suspicion for an investigative detention).

Importantly, if a parole agent knows the informant's identity, this "tip[s] the scales toward credibility," because the informant faces consequences for providing false information. ***Commonwealth v. Brown***, 996 A.2d 473, 478

(Pa. 2010). Thus, where a known informant, himself a parolee, cooperated with parole officers, his tip was reliable. ***Commonwealth v. Altadonna***, 817 A.2d 1145, 1152 (Pa. Super. 2003). By contrast, an anonymous informant's tip would not provide reasonable suspicion without additional investigation to corroborate it. ***In re J.E.***, 907 A.2d 1114, 1120 (Pa. Super. 2006); ***Commonwealth v. Hayward***, 756 A.2d 23, 38 (Pa. Super. 2000).

Likewise, the level of detail of the information in a tip and the basis for that information factor into reasonable suspicion—"The more intimate the basis of knowledge, the more likely the information is to be trustworthy." ***Griffin***, 954 A.2d at 650–51 (citing ***In the Interest of O.A.***, 717 A.2d 490 (Pa. 1998)). For example, a report from a known 911 caller who described a man urinating in public and drinking beer while driving provided reasonable suspicion to detain a man who matched the description, with no corroboration needed. ***Commonwealth v. Barber***, 889 A.2d 587, 595 (Pa. Super. 2005).

However, even if an informant is known, a vague tip is insufficient to provide reasonable suspicion. Thus, a report from a later-identified 911 caller that a specific car "was involved in drug activity" was insufficient to provide reasonable suspicion to detain the car's driver. ***Commonwealth v. Jones***, 845 A.2d 821, 822–23 (Pa. Super. 2004) [***T. Jones***]. We affirmed the grant of suppression, reasoning that even though the caller's identity was known, the scant information provided was too vague to form the basis of reasonable suspicion. ***Id.*** at 825–26. Similarly, an anonymous tip that a parolee was dealing drugs and had received a traffic citation was of insufficient quality to

provide reasonable suspicion to search his apartment without a warrant. ***Commonwealth v. Coleman***, 130 A.3d 38, 48 (Pa. Super. 2015).

Jones urges that the informant's tip alone was inadequate to provide reasonable suspicion. Jones' Brief at 13–25. He points out that the informant was untested and mysterious, that the tip was vague and lacked indication of how it was learned, and that agents did not corroborate the tip before going to Jones' apartment. Moreover, the information about the location of the firearm turned out to be incorrect. Jones therefore argues that there was no reasonable suspicion to search his apartment. We disagree.

Here, the informant's tip provided reasonable suspicion for parole agents to search Jones' apartment. Agent Lynde knew who the informant was and spoke directly with the informant by telephone in mid-July 2020. The informant had firsthand knowledge that Jones had a firearm and two extended magazines for the firearm, that he may be dealing drugs,[8] and that he had traveled to California recently without permission. Unlike the vague assertion in ***T. Jones*** that a car "was involved in drug activity," the informant's allegations here implicated Jones in specific parole violations, namely possessing a firearm and accessories, dealing drugs, and leaving Pennsylvania. Searching for evidence of these violations in Jones' apartment reasonably related to the parole agents' duty. Based on the tip by a known

---

[8] Agent Lynde explained that the informant "observed certain things" "that are indicative of someone dealing drugs." N.T., 2/10/21, at 49–50.

informant with firsthand knowledge that Jones committed multiple parole violations, the parole agents did not need to further investigate before searching Jones' apartment.[9] Therefore, the suppression court did not err in concluding that parole agents had reasonable suspicion to search Jones' apartment.

In his remaining appellate issues, Jones protests any analysis beyond the state parole agents' cause to enter his apartment. He argues that because the parole agents did not have reasonable suspicion to enter his apartment in the first place, the doctrine of inevitable discovery should not apply. Jones' Brief at 25–29. He further contends that his privacy interest in K.R.'s bags is irrelevant to determine whether the agents should have been at his apartment that morning.[10] *Id.* at 30–33.

However, these arguments fail because the informant's tip did provide reasonable suspicion to search Jones' apartment, as noted *supra*. Because the parole agents could enter the apartment, it was proper for the suppression court to consider what happened once they were inside.

_____

[9] The Commonwealth adds that "before the search of the room began," Jones admitted that he went to California, thereby partially corroborating the tip. Commonwealth's Brief at 16. This elides that Jones made this statement only after agents had entered his apartment and handcuffed him. Because we assess reasonable suspicion "at the moment of the [intrusion]," *Moore*, 805 A.2d at 619, Jones' partial admission does not play into our analysis.

[10] Having narrowed his issues on appeal, Jones makes no argument that any of the items in the apartment (such as those in K.R.'s bags) were not his or that he did not possess them.

In sum, the detailed tip from a known informant gave reasonable suspicion that Jones violated his parole and that evidence of the violations would be in his apartment. The suppression court properly considered the parties' arguments and did not err in denying Jones' motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/12/2022