**Commonwealth v. Wiggins**

*Adrienne D. Jappe*, for Commonwealth.
*Leigh P. Narcuddi*, for defendant.

SMYTH, *J.*, February 19, 2014—

## I. Introduction

After hearing, this court granted defendant's motion under the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 581, in this drug prosecution, to suppress evidence seized in a police search of his residence conducted under the putative authority of a search warrant obtained from a magistrate. The Commonwealth has appealed the order of suppression to the Superior Court of Pennsylvania. Although we previously under Pa.R.Crim.P. 581(I) placed on the record our findings of fact and

conclusions of law supporting our decision, and have done our best to fulfill our obligation under the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925, to state in this opinion the reasons for the order on appeal, still many of the facts and circumstances surrounding the obtaining of the warrant and the conduct of the search that were most pertinent to our ruling remain shrouded in mystery, inviting speculation not normally part of the decision-making process.

## II. Factual Background

Late at night on December 11, 2010, police were staking out an apartment house in Cheltenham Township, Montgomery County. They suspected an "element" up from Kensington operating out of a ground-floor apartment, the occupant of which they knew, might be involved in a rise in burglaries and thefts in the area. (Suppression Hr'g Tr. 25-26, Mar. 26, 2012.)

The supervising sergeant on the scene saw two unknown men who seemed to have emerged from the building come down the sidewalk, get into a car, and drive off. The sergeant observed that, in his words, it "rolled" (Hr'g Tr. 13:15) or "slid" (Hr'g Tr. 13:20) through two stop signs, and was going too fast. The sergeant followed the vehicle and stopped it, radioing for backup, which arrived shortly in the form of two other officers from the stakeout.

The sergeant ran a check on the vehicle and determined it was registered to a female, and, upon asking the driver for license and registration, was told he had no license. The driver said the car was his aunt's, but the two men in the car fumbled in the glove compartment before producing the registration, which behavior the sergeant

found suspicious. The sergeant pulled the driver from the car and he was patted down for weapons, whereupon packets of cocaine fell from his belt to the ground, and he was arrested.

The sergeant also questioned the passenger, defendant. At first the sergeant heard defendant identify himself as "Omar" Wiggins, but then he produced a card with the name "Omont" Wiggins. Defendant also verbally gave the sergeant a date of birth later determined to be off by one day. Defendant appeared to be passing over a Pennsylvania license among his papers, so the sergeant asked to see it. That license bore the name "Omount" Wiggins, and had a birth date that matched up with the name when run through a background check. After being removed from the car and patted down by one of the officers (Hr'g Tr. 84) (later affiant on the search warrant) defendant revealed that he stayed with his girlfriend in the apartment building the officers had been surveilling, and described how to get to her apartment on the second floor. The officers took defendant into custody too, apparently for false identification to law-enforcement authorities under 18 Pa.C.S. § 4914, although the court, at the hearing on suppression, did not hear evidence establishing probable cause to show a violation of this section, which provides, "A person commits an offense if he furnishes law enforcement authorities with false information about his identity *after being informed by a law enforcement officer...that the person is the subject of an official investigation of a violation of law*." 18 Pa.C.S. § 4914(a) (emphasis added). (The sergeant testified, "I don't know if I was so specific to say this is an official investigation...." (Hr'g Tr. 22:18-19.)) The court also did not find, because

no one so testified, that at any time during the roadside encounter defendant was given his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). (*See* Hr'g Tr. 106-07.)

In any event, as defendant and the driver of the vehicle were taken to the police station for processing, the officers returned to the apartment building to investigate. They found the door of the ground-floor apartment open, and entered. While they were there, the resident they knew returned with another man.

The sergeant and the other two officers who responded to the car stop then went to the second floor to locate the apartment defendant had described. They knocked on the door, and a female answered, opening the door only partially. She confirmed she was defendant's girlfriend and he lived there with her.

The officers noticed a strong pungent odor of raw marijuana wafting from the apartment. Upon questioning, the female said if there was marijuana inside, it wasn't hers.

The sergeant and one of the officers (the affiant) claimed the female then verbally consented to their request to search the apartment. However, their testimony at the hearing on suppression was not consistent on whether the consent was to search the whole apartment or simply look behind the door for anyone else who might be there. (Compare Hr'g Tr. 35 with Hr'g Tr. 86.) The court also questioned why, if she had consented to a search, the officers did not have her execute a written consent-to-search form they had and proceed with a consensual search rather than seek a search warrant as they did. (Statement R. Tr. 8-9, Aug. 8, 2013; cf. Hr'g Tr. 36, 86:11-12 ("We decided to do it right

and we decided to get a search warrant").) The copy of the affiant's warrant affidavit introduced as a hearing exhibit referred to the alleged consent (Hr'g Tr. Ex. C-3, at 3) but since the search warrant and related papers were never officially filed with this court as required by Pa.R.Crim.P. 210, as we will discuss later, at the time of the hearing the only statement of the affiant's filed of record was his affidavit of probable cause in the police criminal complaint, which referred to the warrant, but not to consent. (Police Criminal Compl. 7 (Affidavit of probable cause).) In any event, the hearing focused mainly on the process used to obtain and execute the search warrant, not the possible validity of any consent; in our findings of fact and conclusions of law entered on the record pursuant to Pa.R.Crim.P. 581(I) (Statement R. Tr. 8-9) we explicitly found the theory that there was consent to search not to be credible, and the Commonwealth has not pursued the issue of consent on appeal. *Cf. Commonwealth v. Jones*, 845 A.2d 821 (Pa. Super. Ct. 2004) (affirming suppression of evidence seized during illegal investigatory stop based on informer's report of "drug activity" in a described car and upholding trial court's finding arresting officer's testimony that he initiated the stop after seeing $100 bills in the driver's hand lacked credibility partly because the fact was omitted from the officer's police report), cited in *Commonwealth v. Lucky*, 143 M.C.L.R. 181, 183 (Pa. C.P. Montg. County Jan. 26, 2006) (suppressing evidence seized in search of person noting officer's testimony indicating consent was not supported in his or his partner's reports indicating only that they initiated a pat-down), case nol-prossed, No. 1422-05 (Pa. C.P. Montg. County Mar. 8, 2006). *See generally Commonwealth v. Acosta*, 815 A.2d 1078, 1083 (Pa. Super. Ct. 2003) (en banc) ("It

is the Commonwealth's burden to prove that a defendant consented to a warrantless search").

The police took the female (as well as the two men encountered downstairs) back to the station, and set about to obtain a warrant to search her apartment. The third officer, who had been present at both the traffic stop and the initial encounter with the female, stayed behind, and according to all three officers testifying at the hearing the apartment was "secured" (Hr'g Tr. 35:22, 89:8-15, 114:18-25) while the others returned to the station. In fact the third officer testified, alone among the three, that, "I was in the apartment prior to that for a sweep when we originally made contact with one of the residents that lived in the apartment." (Hr'g Tr. 115:24-116:1. But cf. Hr'g Tr. 89, 91:7-10 (answering "No" to district attorney's compound question to the affiant "was there like a sweep or anything in plain view taken out of the apartment before you did the search").) (Presumably "sweep" referred to the "protective sweep" authorized by *Maryland v. Buie*, 494 U.S. 325, 334 (1990) ("[A]s an incident to the arrest . . . officers [can], as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.").) Conversely, the third ("securing/sweeping") officer said nothing about the alleged "consent" to search that the sergeant and the affiant testified, equivocally, the "resident" had given

them, in the presence of all three. However, much as with the issue of consent, the parties at the hearing did not dwell on the scope — or even the existence — of the so-called "sweep," and it was not mentioned in the search-warrant affidavit. According to the officer who said he performed the sweep, he confiscated no drugs or other contraband during it; only later during the full-blown search upon the other officers' return with the warrant did he find and seize within a bedroom of the apartment the marijuana, drug paraphernalia, and a gun (Hr'g Tr. 116-17) that form the basis of the prosecution. (But cf. 116:19-21 ("The odor of the raw marijuana was so strong from that bedroom that it led me right to a window at the side of the bedroom....").)

Meanwhile back at the station the sergeant interviewed several of the detainees while the other officer prepared an affidavit of probable cause to submit to a magistrate in support of an application for a search warrant under Pa.R.Crim.P. 203, which provides: "No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits." Pa.R.Crim.P. 203(B); cf. Pa.R.Crim.P. 103 (defining "issuing authority"). In this case, the affiant intended to use the "advanced communication technology" alternative to an in-person appearance before the issuing authority. The rule describes the parameters of that alternative as follows:

Immediately prior to submitting a search warrant application and affidavit to an issuing authority using advanced communication technology, the affiant must

personally communicate with the issuing authority by any device which, at a minimum, allows for simultaneous audio-visual communication. During the communication, the issuing authority shall verify the identity of the affiant, and orally administer an oath to the affiant.

Pa.R.Crim.P. 203(C). The comment to the rule amplifies that,

When advanced communication technology is used, the issuing authority is required by this rule to (1) determine that the evidence contained in the affidavit(s) establishes probable cause, and (2) verify the identity of the affiant.

The "visual" requirement in paragraph (C) must allow, at a minimum, the issuing authority to see the affiant at the time the oath is administered and the information received.

Pa.R.Crim.P. 203 cmt. What happened next, and the lack of compliance with these rules, was at the heart of defendant's effort to suppress the evidence seized from the apartment.

It was now the early morning of December 12, 2010, a Sunday, and rather than take his application for a search warrant before the regular local district judge, the officer had to go through county dispatch to contact the judge on duty, Magisterial District Judge Jay S. Friedenberg, and arrange the audio-visual hookup required by the rule in the absence of an in-person presentation of the affidavit and application. The officer did not know at the time the whereabouts of Judge Friedenberg or his office (which

the officer later learned was in Willow Grove, judicially noted to be less than half an hour's drive from Cheltenham (Statement R. Tr. 6)) and this court found as a fact the two were previously unacquainted. (Statement R. Tr. 6.) Judge Friedenberg informed the officer that the visual component (of the audio-visual communication required by the rule) would not be necessary, and that the application and warrant would be handled by fax and telephone alone. The officer didn't know whether Judge Friedenberg's video equipment wasn't working or the Judge didn't know how to use it, but simply followed the judge's instructions. (Cf. Statement R. Tr. 7-8 ("[T]he Commonwealth suggests there was some type of undefined malfunction which prevented the visual confrontation between the affiant and the district justice. There was no testimony offered to support this claim").) Thus, the officer confirmed there was no video done of the search-warrant procedure, but that it was done only telephonically, and, furthermore, "[W]e have done that in the past." (Hr'g Tr. 88:11-12; accord Hr'g Tr. 109:20-21 ("In the past, Your Honor, we've done it telephonically").)

The officer typed an application and affidavit of probable cause to search the second-floor apartment onto a computer form, printed it out, and signed it. He sent the signed application for the search warrant and affidavit by fax to Judge Friedenberg. The officer and the judge communicated back and forth by telephone about the application, with the judge pointing out a problem in the papers that needed correcting. The officer corrected the problem and sent a redone application back by fax. At some point the judge asked the officer over the telephone whether he swore that the facts set forth in the affidavit

were true and correct, and the officer stated he did. The judge then, according to the officer, signed the completed warrant and returned it to him by fax.

The officer indicated in his testimony this back-and-forth process took place over a matter of minutes. However, he also indicated he was waiting anxiously for the final warrant to come back by fax from the judge because, "We must have called each other numerous times because there was [sic] fax issues, but eventually it came over and I received the copy and I told the judge I have the copy, everything is good[,] and then I went directly from the police station to the location in question." (Hr'g Tr. 90:1-5.)

One of the arguments for suppression was that the actual search warrant, affidavit, and inventory of property seized were never filed with the clerk of this court as required by Pa.R.Crim.P. 210. The first evidence of record of the warrant is the copy the Commonwealth introduced as an exhibit at the hearing on suppression. This copy bore indicia of having been sent back and forth by fax. Both the officer's signatures on each of the three pages of the exhibit and the Judge's, as well as the judge's seals, are facsimiles (although the copies of the judge's signatures and seals are illegible, with the seals actually looking more like smudges). (Hr'g Tr. Ex. C-3, at 1-3.) The facsimiles of the judge's signature on the front page attesting the oath and authorizing the warrant indicates (in photocopied handwriting) the time of affixation as 7:00 A.M., December 12, 2010. (Hr'g Tr. Ex. C-3, at 1.) Each of the three pages displays two fax "tags" at the top. The first page indicates a fax emanating from Judge Jay S. Friedenberg at 6:49 A.M., with the next two pages showing 6:50 A.M. (Hr'g

Tr. Ex. C-3, at 1-3.) Beneath these lines appear machine-generated tags indicating, on the first page, a fax from the Cheltenham Police at 7:48 A.M., and on the next two pages 7:50 A.M. (Hr'g Tr. Ex. C-3, at 1-3.) The officer at the hearing could not explain the discrepancies in time, stating he paid no attention to the tags affixed to faxes by the department's machine and suggesting it could have malfunctioned or might not have been adjusted for daylight savings time. (Hr'g Tr. 92, 98, 108.) Had such a lack of adjustment been the sole explanation, the evidence would indicate the faxes of each page back and forth between the judge and the Cheltenham Police Department happened nearly simultaneously, which could not have occurred; on the other hand, if the times are correct, the fax from the Cheltenham Police was sent an hour after the judge's fax, and no "tag" indicating a fax back from the judge after that appears on the document.

The Pennsylvania Rules of Criminal Procedure require that a copy of a search warrant that is served when no one is present at the premises searched must be left there in a conspicuous place together with the supporting affidavit(s) and a receipt for any property seized. Pa.R.Crim.P. 208. At the hearing, the defense introduced into evidence the actual documents the police left in the second-floor apartment of defendant and his girlfriend, through the testimony of the girlfriend, whom we found to be credible. After she was released from custody, the search of the apartment had concluded, and she was allowed to reenter her home, she found copies of the warrant/ affidavit and receipt on a coffee table where the police testified they had been left (Hr'g Tr. 45) and turned them over to defendant's attorney, who retained them until the

hearing. The receipt is a yellow carbon copy of an original signed by the sergeant and the affiant showing the time of the search as 7:17 A.M. (Hr'g Tr. Ex. D-2 (Receipt/ inventory seized property).) (The same time of search appears on a copy of the "Return of service and inventory" (pursuant to Pa.R.Crim.P. 209) that the affiant prepared and the Commonwealth introduced as an exhibit. (Hr'g Tr. Ex. C-2.) As stated, the issuing authority never filed these documents with the clerk of courts as required by Pa.R.Crim.P. 210, and the originals were not in evidence.) The copy of the warrant and supporting affidavit found on the table bears the affiant's *original* (raised) signature on each of its three pages. (Hr'g Tr. Ex. D-2, 1-3.) However, this copy is neither signed, dated, nor filled out in any manner by the district judge (nor does it bear the fax tags appearing on the Commonwealth's exhibit). The sergeant in charge, who testified to leaving the papers at the scene, speculated that the copy of the warrant not signed by the judge might have "fallen out" (Hr'g Tr. 57:25) of a file of paperwork the officers had at the premises, although he believed a signed copy would have been left as well per normal procedure. The officers insisted they did not enter the apartment to conduct the search until the affiant arrived back on the scene with a copy of the warrant signed and sealed by the judge.

## III. Procedural History

On March 26, 2012, the court presided over a hearing scheduled under Pa.R.Crim.P. 581 on defendant's motion to suppress the evidence seized in the search of his and his girlfriend's apartment. At the district attorney's behest, counsel first summarized the grounds for suppression (in no particular order, he said) as the following violations of

the Rules of Criminal Procedure: 1) The judicial officer to whom the search warrant was returned failed to file it and its supporting papers with this court as required by Pa.R.Crim.P. 210; 2) The copy of the warrant and supporting affidavit police left at the premises searched (pursuant to Pa.R.Crim.P. 208) weren't signed and executed by the issuing authority; 3) The receipt/inventory left at the premises indicating the search commenced at 7:17 A.M. shows it started before the time the warrant issued from the judge, as shown by the fax numbers and times at the top of the copy of the completed warrant produced at the hearing; and 4) The visual contact between magistrate and affiant required under Pa.R.Crim.P. 203(C) where the affiant seeks a warrant via advanced-communication technology rather than in person was missing in that the warrant was procured by telephone and facsimile only. (Hr'g Tr. 3-5.) Counsel stated, "I believe of the four, that perhaps might be the most fatal violation to the warrant itself, as well as the cumulative effect of those four taken together." (Hr'g Tr. 5:18-21.)

In our findings of fact and conclusions of law later entered on the record pursuant to Pa.R.Crim.P. 581(I), we found violations of at least three of these four cited legal constraints on the Commonwealth's ability to break and enter the homes of its residents pursuing evidence "in 'the often competitive enterprise of ferreting out crime,'" *Commonwealth v. Reppert*, 814 A.2d 1196, 1204 (Pa. Super. Ct. 2002) (en banc) (quoting *In re D.E.M.*, 727 A.2d 570, 578 n.19 (Pa. Super. Ct. 1999) (quoting *Terry v. Ohio*, 392 U.S. 1, 12 (1968)), agreeing with counsel's appraisal that the fourth, the violation of Pa.R.Crim.P. 203(C), was most concerning. (Statement R. Tr. 2-9.) We did not explicitly

find as counsel argued that the third violation, that is, that the search started before the issuance of an executed warrant, occurred; however, given the inconsistencies in testimony about consent to search, a prior "sweep" of the premises, the process of obtaining the warrant (including the unexplained discrepancies in the times on the "fax tags"), the unexecuted copy of the warrant left at the premises, and the fact that an original copy of the warrant signed by or returned to or by the judge never surfaced, we did not find to the contrary either. (We also found a violation of Pa.R.Crim.P. 206: "Each application for a search warrant shall be supported by written affidavit(s) signed and sworn to or affirmed before an issuing authority...." (Statement R. Tr. 3-4.) Counsel had developed this sub-argument in cross-examining the affiant and in a brief submitted after the hearing arguing that the affiant had signed the affidavit prior to being sworn and without appearing "before" the issuing authority. (Hr'g Tr. 95-105; Mem. Law Support Mot. Suppress 2, 3-7)).

Counsel further argued at the hearing that the so-called "four corners" of the affidavit did not establish probable cause to search (in violation of Pa.R.Crim.P. 203(B), (D)) in that the officers had no grounds to detain or question defendant without warning him (under Miranda) and hence the court should have excised from the warrant the "fruit of the poison tree" (Hr'g Tr. 5-7) of their having learned from the questioning the whereabouts of his apartment and then going there to investigate and smelling the marijuana. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963) ("fruit of the poisonous tree"); *Commonwealth v. Shaw*, 476 Pa. 543, 555, 383 A.2d 496, 502 (1978) ("In deciding whether a warrant issued in part upon information obtained

through exploitation of illegal police conduct is valid, we must consider whether, absent the information obtained through the illegal activity, probable cause existed to issue the warrant"). Believing our resolution of the other issues supported our decision to suppress the fruits of the search, we did not address this "four corners" argument in our findings of fact and conclusions of law, although as stated earlier we were struck by the meager evidence of probable cause to arrest defendant and the lack of evidence that *Miranda* warnings were given to him.

After counsel's summation of the bases for suppression, the Commonwealth presented its case, consisting of the testimony of the three police officers most involved in arresting defendant and subsequently searching his apartment: the sergeant who stopped the car in which defendant was a passenger and led the team of Cheltenham officers who performed the search; the affiant on the affidavit of probable cause supporting the search warrant presented telephonically and by fax to the district judge and left at the premises in its unexecuted version; and the officer who guarded the apartment while the other officers were away questioning witnesses and obtaining the warrant, conducted the prior "sweep" of the apartment, and found the contraband therein during the search. The defense presented the testimony of the affiant to reexamine him briefly as to why visual contact with the judge was not established, and of defendant's girlfriend as to the documents she found upon returning to the apartment after being released from detention.

The court admitted into evidence the following exhibits: for the Commonwealth, copies of 1) a one-page receipt/inventory of seized property (Ex. C-1); 2) a one-

page return of service and inventory (Ex. C-2); and 3) a completed three-page application for search warrant and authorization and supporting affidavit of probable cause with fax marks (Ex. C-3); and for the defense, 1) additional copies of the documents comprising the Commonwealth's three exhibits (Ex. D-1), and 2) the original three-page search warrant signed by the affiant but not the judge and the yellow carbon copy of the receipt/inventory (Ex. D-2) that were left at the premises searched. (*See* Hr'g Tr. 2.) The court stated on the record that the exhibits would be placed in the court file and given to the court reporter (Hr'g Tr. 123, 127) but, at some point in the slow progress of the case, they were misplaced, the significance of which we will touch on in completing the procedural history.

The parties rested their cases, and we took the motion for suppression under advisement, asked the court reporter to transcribe the notes, and gave the parties thirty days to file briefs on the issues raised plus seven days for replies. (Hr'g Tr. 126-27.) The court reporter duly transcribed the notes of the hearing, and they were filed and scanned into the record in mid and late April 2012. The notes do not include the exhibits, nor do the exhibits appear elsewhere within the official record. The thirty-seven days from the date of the hearing the parties had to file briefs expired in May 2012. The court's official docket reveals no briefs filed during that time period; indeed no briefs have ever been "filed" in this case within the meaning of Pa.R.Crim.P. 576(A) or appear within the official file of the clerk of courts. We have in our possession principal briefs from both parties, but they are undated and we have no record or recollection of when they were submitted. The district attorney's brief contains a certificate of service

by mail on defense counsel dated April 2, 2013; however, the certificate also indicates the document being served is the Commonwealth's answer to defendant's petition to reconsider sentence, a nonexistent pleading. The date in the certificate of service does not appear to be a simple typographical misdating by one year, as the attached brief cites to pages of the notes of testimony (unlike defendant's brief, which does not), which had not been filed as of April 2, 2012. We had access to the briefs in preparing our findings and conclusions (upon reconsideration), which we rendered in August 2013; however, shortly before granting reconsideration on April 16, 2013, we did not, just as we did not have access to the hearing exhibits. In transmitting the official record to the Superior Court under Pa.R.A.P. 1931, we shall try to ensure that both the briefs and the exhibits are included. Cf. Pa.R.A.P. 1926(b) (1) ("If anything material to a party is omitted from the record by error, breakdown in the processes of the court, or accident[,] or is misstated therein, the omission or misstatement may be corrected by the following means: (1) by the trial court...on its own initiative at any time....").

Returning to the chain of procedural events, on July 18, 2012, we initially ordered the motion for suppression denied, and the case placed back on the trial list. In the ensuing months, the case came up on the trial list numerous times, but was continued for various reasons. In the meantime, the court began to reconsider the legality of the process by which the search of the apartment was conducted, and discussed our concerns intermittently with the parties. By late March of 2013, we discovered that the briefs, and more importantly the exhibits, were missing from the official record and the court's

file, impeding our reconsideration. At some point we recovered these documents; our records show that the district attorney supplied us with the original exhibits, though not when. On April 16, 2013, we vacated the order denying suppression, *cf. Commonwealth v. James*, 69 A.3d 180 (Pa. 2013) (holding an order of suppression was interlocutory not final such that 42 Pa.C.S. § 5505 did not apply and the trial court had authority to revisit the order and reach a different result beyond the thirty-day period for modifying an order provided by section 5505), and announced that at our next trial list on May 10, 2013, we would place on the record findings of fact and conclusions of law regarding suppression as contemplated by Pa.R.Crim.P. 581(I) (providing for contemporaneous entry on the record of findings of fact and conclusions of law as to whether evidence was obtained in violation of a defendant's rights or in violation of the rules or any statute). *See Commonwealth v. Millner*, 585 Pa. 237, 251-52 & n.4, 888 A.2d 680, 688-89 & n.4 (2005) (emphasizing importance of making findings and conclusions on suppression contemporaneously under Pa.R.Crim.P. 581(I) rather than rendering them in an opinion filed after an appeal from the ruling is taken (partly because contemporaneous findings permit the losing party to assess more intelligently whether or not to burden the appellate system with an appeal of the ruling particularly in cases of contested evidence)); *cf. Commonwealth v. Stevenson*, 832 A.2d 1123, 1126 (Pa. Super. Ct. 2003) (finding a post-appeal opinion adequately related the trial court's factual findings and legal conclusions where the court had not entered them on the record under Pa.R.Crim.P. 581(I) following the hearing on suppression (citing *Reppert*, 814 A.2d at 1200)).

Alas, on April 25, 2013, the undersigned received a letter from defense counsel's office requesting continuance of the May 10 proceeding because he was recovering from surgery and was not expected back for four to six weeks (Call trial list order app., May 10, 2013) and we continued the matter (Call trial list order, May 10, 2013). Eventually the proceeding was held, on August 8, 2013, and we entered our findings of fact and conclusions of law on the record (Statement R. Tr. 2-9) and granted defendant's motion to suppress evidence. (Order dur def.'s mot. suppress evidence, Aug. 8, 2013.) We also ordered the case placed back on the trial list for September. (Call trial list order, Aug. 8, 2013.)

On September 5, 2013, the Commonwealth filed a notice of appeal of the order of suppression to the Superior Court of Pennsylvania, certifying pursuant to Pa.R.A.P. 311(d) that the order would terminate or substantially handicap the prosecution. Although we had stated reasons for our order in the contemporaneous findings of fact and conclusions of law under Pa.R.Crim.P. 581(I), thus substantially fulfilling our obligations under Pa.R.A.P. 1925(a) ("[U]pon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found"), *cf. Millner*, 585 Pa. at 251-52 & n.4, 888 A.2d at 688-89 & n.4, on September 10, 2013, we ordered the Commonwealth under Pa.R.A.P. 1925(b) to file and serve within twenty-one days a concise statement of errors complained of

on appeal, to be sure we had adequately addressed the Commonwealth's arguments. On October 1, 2013, the Commonwealth complied.

## IV. Issue on Appeal

The Commonwealth's 1925(b) statement frames the claim on appeal as follows: "The suppression court erred in suppressing the evidence retrieved from [defendant's apartment] based solely on technical violations of the Pennsylvania Rules of Criminal Procedure pertaining to search warrants, where the purported violations did not implicate fundamental, constitutional concerns, were not conducted in bad faith, and did not substantially prejudice [defendant]." (Concise statement para. 1.)

## V. Discussion

At a hearing on a motion under Pa.R.Crim.P. 581 to suppress the fruits of a search as illegally obtained, "The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H); *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super. Ct. 2011) (en banc). "In all cases, the burden of production is now upon the Commonwealth. *See Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). The burden of persuasion is there as well." Pa.R.Crim.P. 581 cmt. (citing *Miranda*, 384 U.S. at 479). "[Butler] establishes a preponderance of the evidence as the standard of proof." Pa.R.Crim.P. 581 cmt.; *Commonwealth v. DeWitt*, 530 Pa. 299, 301, 608 A.2d 1030, 1031 (1992).

At a hearing on suppression, "It is within the suppression

court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some[,] or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. Ct. 2003) (citation omitted), quoted in *Galendez*, 27 A.3d at 1046; *see also Acosta*, 815 A.2d at 1082 n.2. "When a trial court makes a determination with regard to the credibility of certain testimony, [the appellate court] must accept that finding where the record supports it." *Jones*, 845 A.2d at 825.

> In cases where [an appellate court] review[s] the findings of fact made by a trial court to suppress evidence, we follow a clearly defined standard of review. Where the Commonwealth appeals the findings of a [s]uppression [c]ourt we consider only the evidence of the defendant's witnesses and the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. We are bound by the lower court's findings of fact if they are supported in the record, but we must examine any legal conclusions drawn from those facts.

*Commonwealth v. Pickron*, 535 Pa. 241, 246, 634 A.2d 1093, 1096 (1993); accord *DeWitt*, 530 Pa. at 302, 608 A.2d at at 1031; *Jones*, 845 A.2d at 824; *Acosta*, 815 A.2d at 1082 (citing *Commonwealth v. Torres*, 564 Pa. 86, 95, 764 A.2d 532, 536-37 (2001)); *Commonwealth v. McClease*, 750 A.2d 320, 323-24 (2000); *cf. Millner*, 585 Pa. at 246, 888 A.2d at 685 ("The appellate standard of review of suppression rulings is well-settled. This court is bound by those of the suppression court's factual findings which find support in the record, but we are not bound

by the court's conclusions of law. When the suppression court's specific factual findings are unannounced, or there is a gap in the findings, the appellate court should consider only the evidence of the prevailing suppression party (here, [the defendant]) and the evidence of the other party (here, the prosecution) that, when read in the context of the entire record, remains uncontradicted" (citation omitted)).

The American law of search and seizure stems from the precept that,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see also* U.S. Const. amend. XIV, § 2 (providing that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"). A provision of Pennsylvania's Constitution, Pa. Const. art. I, § 8, even older than its federal counterpart, provides, in similar terms, independent and at times greater protections to persons within the Commonwealth:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. 1, § 8. The placement of this protection of individual liberty in the first article of Pennsylvania's seminal constitutional document, which predates the U.S. Constitution and Bill of Rights, signifies the importance of the guaranty to the foundation of the Commonwealth. *See Commonwealth v. Matos*, 543 Pa. 449, 455-56, 672 A.2d 769, 772-73 (1996) ("[T]his court [has] thoroughly examined the history of Article I, Section 8, and noted that this constitutional provision had its origin *prior* to the fourth amendment, in . . . 1776. The court [has] also recognized that the modern version of Article I, Section 8 has remained untouched for over 200 years, and examined this significance [in finding the provision 'unshakably linked to a right of privacy in this Commonwealth']." (quoting *Commonwealth v. Edmunds*, 526 Pa. 374, 397, 586 A.2d 887, 898 (1991))); *see also Commonwealth v. Jackson*, 548 Pa. 484, 488, 698 A.2d 571, 573 (1997) ("The protection against unreasonable searches and seizures afforded by the Pennsylvania Constitution is broader than that under the federal Constitution"), quoted in *Stevenson*, 832 A.2d at 1127 (post-9/11), and *McClease*, 750 A.2d at 324 ("Accordingly, though some federal precedents guide us in our decision here, they do not compel the result we reach"); *Commonwealth v. Martin*, 705 A.2d 887, 890 (Pa. Super. Ct. 1997) ("[T]he protections of individual privacy against unreasonable governmental searches and seizures under the Pennsylvania Constitution are more expansive than those afforded under the United States Constitution. *Commonwealth v. Parker*, 422 Pa. Super. 393, 619 A.2d 735 (1993). The United States Supreme Court's interpretations of fourth amendment guarantees do not bind this court in reaching conclusions regarding the protections afforded under Article I, Section 8 of the

Pennsylvania Constitution"); *In re B.C.*, 453 Pa. Super. 294, 308, 683 A.2d 919, 926 (1996) ("Pennsylvania courts, in comparison to federal courts, give greater weight to an individual's privacy interests when balancing the relative importance of privacy against the needs of law enforcement"), *appeal dismissed*, 562 Pa. 204, 754 A.2d 665 (2000); *Commonwealth v. Schaeffer*, 370 Pa. Super. 179, 192, 536 A.2d 354, 360 (1987) (en banc) ("Article I, section 8 of the Pennsylvania Constitution, as consistently interpreted by [the Pennsylvania Supreme Court], *mandates greater need for protection from illegal government conduct offensive to the right of privacy.*" (quoting *Commonwealth v. Sell*, 504 Pa. 46, 67, 470 A.2d 457, 468 (1983) (emphasis added))), *aff'd per curiam on reh'g by an equally divided court*, 539 Pa. 272, 652 A.2d 294 (1994); *cf. Shaw*, 476 Pa. at 550, 383 A.2d at 499 ("Upon closing the door of one's home to the outside world, a person may legitimately expect the highest degree of privacy known to our society"). *See generally Commonwealth v. Polo*, 563 Pa. 218, 759 A.2d 372 (2000) (finding illegal under Pa. Const. art. I, § 8, without reaching the issue under the fourth amendment, an investigative detention of a bus leading to a "consent" search of a passenger); *Matos*, 543 Pa. 449, 672 A.2d 769 (rejecting under Article I, Section 8 the interpretation of the fourth amendment in *California v. Hodari D.*, 499 U.S. 621 (1991), which held that a police chase in which the chased person discarded contraband did not constitute a "seizure"); *Edmunds*, 526 Pa. 374, 586 A.2d 887 (discussing the relationship between the federal and Pennsylvania constitutional prohibitions on unreasonable search and seizure and rejecting, under Pa. Const. art. I, § 8, the "good-faith" exception to the exclusionary rule

adopted by the U.S. Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), under the fourth amendment).

Both our federal and state constitutions establish a distinct preference that searches conducted by law enforcement be authorized by a warrant issued by an independent, detached, and neutral magistrate, based upon probable cause, supported by an affiant's oath or affirmation, to show that the items sought (1) are connected with criminal activity and (2) will be found in the place to be searched. *See United States v. Ventresca*, 380 U.S. 102 (1965); *Commonwealth v. Council*, 491 Pa. 434, 443, 421 A.2d 623, 627 (1980); *see also Edmunds*, 526 Pa. at 409, 586 A.2d at 904-05 (emphasizing the importance under the federal and state constitutions of a "neutral and detached" magistrate making an "independent determination of probable cause" rather than acting as a rubber stamp for the police); *cf. Commonwealth v. Sharp*, 453 Pa. Super. 349, 683 A.2d 1219 (1996) (disapproving issuance of a warrant by a district justice who was married to the chief officer investigating the case). Indeed, "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Strickler*, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)); *Commonwealth v. Cleckley*, 558 Pa. 517, 520, 738 A.2d 427, 429 (1999) ("Under both the fourth amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, a search such as that at issue here, which is conducted without a warrant [pursuant to consent], is deemed to be *per se* unreasonable"); *Commonwealth v. Mesa*, 453 Pa.

Super. 147, 151, 683 A.2d 643, 645 (1996) ("Subject to certain exceptions, warrantless searches are presumed unreasonable [under the Constitution]"); *B.C.*, 453 Pa. Super. at 301, 683 A.2d at 923 ("Warrantless searches and seizures are unreasonable *per se*, unless conducted pursuant to a specifically established and well-delineated exception to the warrant requirement" (citing *Katz v. United States*, 389 U.S. 347, 357 (1967))).

The Pennsylvania requirement for a warrant to conduct a search takes specific shape in the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 203:

> (B) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority.... The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.
>
> ....
>
> (D) At any hearing on a motion for the...suppression of evidence, or for suppression of the fruits of evidence, obtained pursuant to a search warrant, no evidence shall be admissible to establish probable cause other than the affidavits provided for in paragraph (B).

Pa. R. Crim.P. 203(B), (D). These provisions together codify what is known as the "four corners" rule in Pennsylvania, which provides that only evidence contained within the four corners of the affidavit may be considered to establish probable cause. *See Edmunds*, 526 Pa. at 402-04, 586 A.2d at 901-02; *Commonwealth v. O'Shea*, 328 Pa. Super. 104, 476 A.2d 911 (1984) (finding

inadmissible Commonwealth's evidence submitted on remand at a hearing on a motion for suppression where a search was conducted pursuant to a warrant and the Commonwealth may not go outside the averments in the affidavit to establish the existence of probable cause and the validity of the warrant). *But see, e.g., James*, 69 A.3d at 187-90 (hearing on suppression may venture beyond the four corners to test the veracity of facts recited in the affidavit in support of probable cause); *Commonwealth v. Iannaccio*, 304 Pa. Super. 307, 313, 450 A.2d 694, 697 (1982) (observing that in Pennsylvania criminal defendants have the right to go beyond the four corners of the search warrant and challenge deliberate and material misstatements of the governmental affiant), *aff'd by an equally divided court*, 505 Pa. 414, 480 A.2d 966 (1984); *Commonwealth v. Ryan*, 268 Pa. Super. 259, 407 A.2d 1345 (1979), *remanded per curiam*, 489 Pa. 221, 414 A.2d 37 (1980), cited in *James*, 69 A.3d at 188.

Of course between paragraphs (B) and (D) of Pa.R.Crim.P. 203 appears paragraph (C), the provision most central to the motion for suppression in this case, which provides,

Immediately prior to submitting a search warrant application and affidavit to an issuing authority using advanced communication technology, the affiant must personally communicate with the issuing authority by any device which, at a minimum, allows for simultaneous audio-visual communication. During the communication, the issuing authority shall verify the identity of the affiant, and orally administer an oath to the affiant.

Pa.R.Crim.P. 203(C).

> When advanced communication technology is used, the issuing authority is required by this rule to (1) determine that the evidence contained in the affidavit(s) establishes probable cause, and (2) verify the identity of the affiant.

> The "visual" requirement in paragraph (C) must allow, at a minimum, the issuing authority to see the affiant at the time the oath is administered and the information received.

Pa.R.Crim.P. 203 cmt. The Pennsylvania Supreme Court adopted this provision in 2002 to accommodate the increasing role played by advanced-communication technology in police work and to allow for police to obtain a search warrant remotely by use of such technology where the prescribed "simultaneous audio-visual communication" between the affiant and the issuing authority was established.

Evidence obtained in violation of a criminal suspect's constitutional rights to be free from unreasonable search and seizure is subject to suppression under the exclusionary rule. "[T]he exclusion of unconstitutionally obtained evidence is not a constitutional *right*, but a constitutional *remedy* ...." *Edmunds*, 526 Pa. at 395 n.10, 586 A.2d at 898 n.10 (discussing the relationship between the federal and Pennsylvania constitutional prohibitions on unreasonable search and seizure and rejecting, under Pa. Const. art. I, § 8, the "good-faith" exception to the exclusionary rule adopted by the U.S. Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), under the fourth amendment); *see Shaw*, 476 Pa. at 555-56, 383 A.2d at 502; *Mesa*, 453

Pa. Super. at 158, 683 A.2d at 649; *see also Polo*, 563 Pa. 218, 759 A.2d 372 (affirming Superior Court's reversal of trial court's order denying suppression of evidence that the Supreme Court specifically found to have been obtained as a result of search and seizure illegal under Pa. Const. art. I, § 8).

Where suppression of evidence is sought based on violation of the Pennsylvania Rules of Criminal Procedure, the courts of our Commonwealth analyze the violation in light of the importance of the rights involved and their relationship to the fundamental constitutional prohibitions against unreasonable searches and seizures.

> [N]ot all violations of the Rules of Criminal Procedure mandate the remedy of suppression.... "[E]xclusion/ suppression of evidence is not an appropriate remedy for every violation of the Pennsylvania Rules of Criminal Procedure concerning searches and seizures. It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad faith[,] or has substantially prejudiced the defendant that exclusion may be an appropriate remedy."

*Commonwealth v. Rucci*, 543 Pa. 261, 277, 670 A.2d 1129, 1137 (quoting *Commonwealth v. Mason*, 507 Pa. 396, 406-07, 490 A.2d 421, 426 (1985)), *stay granted per curiam*, 544 Pa. 257, 675 A.2d 1240 (1996), cert. denied, 520 U.S. 1121 (1997). Another helpful Pennsylvania appellate-court formulation of the dividing lines between suppressible violations of procedural rules relating to search warrants and violations not demanding suppression appears in *Commonwealth v. Johnson*, 315 Pa. Super. 579, 587-88, 462 A.2d 743, 747-48 (1983) (citations omitted)

(quoting *Commonwealth v. Musi*, 486 Pa. 102, 115-16 & n. 12, 404 A.2d 378, 384 & n. 12 (1979)):

> "A rule of exclusion is properly employed where the objection goes to the question of the reliability of the challenged evidence, or reflects intolerable government conduct which is widespread and cannot otherwise be controlled. A third rationale underpinning the exclusionary rule concerns preserving the integrity of the judicial system. This concern is appropriate where the police practice, although not widespread, is still particularly reprehensible."... Where a rule represents a codification of fourth amendment requirements, e.g., the knock and announce rule, its violation will result in exclusion of evidence. Where, however, the rule goes beyond the requirements of the fourth amendment, e.g., verification of inventory rule or rule requiring police to leave a copy of the search warrant and affidavit, its violation will not result in suppression *unless* (1) there is a particular rule mandating suppression, or (2) the defendant's constitutional rights have been otherwise violated.

*See also Mason*, 507 Pa. at 406, 490 A.2d at 426 ("Where the alleged violation...is not 'fundamental' suppression is required only where: '(1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision of the Rule" (quoting *United States v. Johnson*, 660 F.2d 749, 753 (9th Cir. 1981)).

We apply these principles to the violations of the Rules of Criminal Procedure our findings and conclusions under

Pa.R.Crim.P. 581(I) determined existed in the obtaining and executing of the search warrant in this case. However, in doing so, we cannot analyze each of the violations discretely in isolation from the others, but, especially in light of the murky explanations offered for some of the violations, must review the search-warrant process as a whole, and try to assess in the entire context of the case, as defense counsel urged at the hearing, the violations' "cumulative effect." (Hr'g Tr. 5:20.)

We first found that Pa.R.Crim.P. 208 was violated in that a copy of the warrant completed and approved by the issuing authority was not left at the premises searched. (Statement R. Tr. 3:6-11 ("Rule 208 which requires a copy of the warrant be left on the premises that were subject to the search was not complied with. And I so find that a signed copy of the warrant was not left on the premises at the time of the search"); cf. Hr.g Tr. 4:8-17 ("[T]he rule requires that a copy of the warrant be left on the premises that was searched. Here, papers were left on the premises that were searched, but those papers were not completed. They don't bear the consent or the authority to search granted by the issuing authority. That section of the warrant is left blank. My argument there is that a blank warrant is not a warrant, and therefore, that Rule is violated").) In *Musi*, the Pennsylvania Supreme Court considered the failure of the police to serve any copy of a search warrant and affidavit upon anyone at the premises searched or upon the alleged possessor of items seized, and held that this violation did not require suppression of the evidence.

[T]he procedures required for execution and return of the warrant are ministerial and...irregularities should

not void an otherwise valid search absent a showing of prejudice.... [W]here, as here, [the defendant] has failed to demonstrate that she was prejudiced from the violation of this rule a request to suppress the fruits of the search is not justified.

*Musi*, 486 Pa. at 116, 404 A.2d at 385.

Of course, if, as defense counsel's argument implied, the police *had* no warrant signed and completed by the magistrate at the time they executed the warrant at 7:17 A.M. on December 12, 2010, that would throw a different light on the violation of Pa.R.Crim.P. 208. *Cf. Commonwealth v. Chandler*, 505 Pa. 113, 477 A.2d 851 (1984) (reversing superior court's reversal of suppression of evidence obtained with a warrant marked with the magistrate's "jurat" that he had sworn the affiant but not signed and filled out by the magistrate (so as to show he had independently determined probable cause)). We found unsatisfactory the police explanation as to why they had left at the premises a copy of the warrant signed only by the affiant and not by the magistrate, and why the copy of the warrant the Commonwealth produced at the hearing seemed to indicate being sent by fax by the magistrate at 6:49 A.M., being signed by him at 7:00 A.M., and being sent by fax by the Cheltenham Police at 7:48 A.M. However, we did not explicitly find that the police actually executed the warrant before the issuing authority approved it, because evidence upon which to base such a finding was simply too conflicting. *Cf. Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983) (plurality opinion) (finding no support in record for lower court's finding magistrate purposely misdated a search warrant). Viewed alone, a mistaken time of day on a warrant does

not render it invalid if the court can make a finding of credibility that the mistake was a typographical or other such error. *See, e.g., Commonwealth v. Graham*, 334 Pa. Super. 170, 482 A.2d 1277 (1984) (holding a motion for suppression arguing the time on the warrant rendered it stale was properly denied where the court accepted the affiant's testimony that the warrant was issued at 3:30 P.M. not A.M. and the magistrate's putting A.M. must have been a typo); *Commonwealth v. Chinea*, 246 Pa. Super. 494, 371 A.2d 944 (1977) (holding a magisterial violation in omitting month from date of issuance of search warrant does not require exclusion of evidence seized). Where, however, the evidence is simply insufficient to allow findings of credibility that would explain all the discrepancies in the two different copies of the warrant, one executed and one not, produced at the hearing, we were at a loss to judge the full significance of the violation of Pa.R.Crim.P. 208 we found. *Cf. Hamlin*, 503 Pa. at 217, 469 A.2d at 140 (plurality opinion) ("The omission of the date and time of issuance of the search warrant will be considered fatal only if it deprives the reviewing court or the suppression court of the ability to review the propriety of the issuance and execution of the warrant" (citing *Commonwealth v. Schilling*, 312 Pa. Super. 43, 48, 458 A.2d 226, 228 (1983))).

The mysterious discrepancies between the uncompleted warrant left at the premises and the copy the Commonwealth produced at the hearing also heightened the importance of the second violation we found, that of Pa.R.Crim.P. 210, "which requires that the search warrant, supporting affidavits and inventory be returned to the district justice who issued the warrant and thereafter

filed [with] the clerk of courts to the county where the search took place. That was never done and clearly that was never done." (Statement R. Tr. 3:13-18.) The absence from the record of an original warrant either signed by or returned to the magistrate by the police after the search makes comparison of such a document with the copy of the warrant the Commonwealth produced at the hearing impossible, and thus leaves unanswered all the questions raised about the timing of the executed warrant and its transmission by fax back and forth between affiant and magistrate.

In *Rucci*, the Pennsylvania Supreme Court held that a magistrate's failure to comply with this procedural rule by filing the returned search warrant and supporting papers with the common pleas clerk was not grounds for suppression where the defendant had access to copies of the items at each relevant stage of the proceedings. *Rucci*, 543 Pa. 261, 277, 670 A.2d 1129, 1137 (1996) ("[N]ot all violations of the Rules of Criminal Procedure mandate the remedy of suppression.... '[E]xclusion/suppression of evidence is not an appropriate remedy for every violation of the Pennsylvania Rules of Criminal Procedure concerning searches and seizures. It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad faith[,] or has substantially prejudiced the defendant that exclusion may be an appropriate remedy'" (quoting *Mason*, 507 Pa. at 406-07, 490 A.2d at 426)); accord *Commonwealth v. Ryan*, 268 Pa. Super. 259, 407 A.2d 1345; *see also Johnson*, 315 Pa. Super. at 589 n.9, 462 A.2d at 748 n.9 (collecting federal cases). This case differs somewhat from Rucci in that the failure to file the returned search warrant with the clerk of this court

denied defendant certain "access" to the warrant, that is, access that may have allowed him to piece together the circumstances of the warrant's issuance in a more complete way. Though, true, defendant had "access" before the hearing to the exhibits supplied by the Commonwealth showing what appeared to be the district judge's signature on the search warrant, he had no access to a copy of the warrant filed with and by the judge after its execution to compare that warrant and the fax marks and times on it, if any, with those on the copy of the warrant produced by the Commonwealth. Defendant also had early access to a copy of the warrant left at the premises pursuant to Pa.R.Crim.P. 208; that copy contained the affiant's *original* signature, but no indication whatever of submission to and approval by the issuing authority, or at what time of day those events might have occurred. Thus, the theory that the officers performed the search before securing an executed copy of the warrant, though plausible in light of all the obvious discrepancies with the warrant, was unverifiable. *Cf. Chandler*, 505 Pa. at 123-24, 477 A.2d at 856 (holding magistrate must make judicial determination albeit nontechnical common-sense judgment as to whether probable cause to issue search warrant exists; it is not enough for policeman to present affidavit to magistrate prior to search which affidavit magistrate may consider on issue of probable cause with complete hindsight after police have completed their search).

Also, though we nowhere explicitly found that the police officers acted in "bad faith" in executing the warrant, we also did not explicitly find who was at fault in the failure to file the warrant and related documents with this court, the issuing authority or the police. Indeed, the

record was silent as to whether the police ever filed the executed warrant and return/receipt/inventory with the issuing authority, so that he could fulfill his concomitant obligations to file those documents with this court. If those documents would have exposed flaws in the police story about the process of obtaining and executing the warrant, one could have imagined a motive on someone's part for not seeing to their proper filing with the court. Since those original documents were never produced, the court has difficulty sifting through the welter of unexplained or downright conflicting information presented surrounding the obtaining and execution of the warrant with which to judge the good or bad faith of the police, or of the magistrate for that matter.

We turn to in our view the most significant of the violations that occurred in the obtaining of the warrant, the decisions to apply for and issue it without the benefit of the "audio-visual communication" required by Pa.R.Crim.P. 203(C) & cmt. As we stated in our findings and conclusions, this procedure on the part of the police and the magistrate violated "Rule 203, which requires a visual face-to-face encounter with the district justice issuing the search warrant. [Defendant] contends that was never done. And clearly, this record indicates that was never done.... I think that has clearly constitutional implications." (Statement R. Tr. 3:19-4:12.) In conjunction with the Pa.R.Crim.P. 203(C) violation, we also found a violation of Pa.R.Crim.P. 206, "which requires the search warrant be supported by a written [a]ffidavit signed and sworn to or affirmed before the issuing authority. And that was not done either in this particular case." (Statement R. Tr. 3:25-4:5.)

Essentially, we found that the Pennsylvania Supreme Court's decision in adopting Pa.R.Crim.P. 203(C) & cmt. to allow a search warrant to be obtained by advanced-communication technology as long as the procedure included an "audio-visual" communication so that the magistrate could "see" the affiant and verify his identity while administering the oath and taking his affidavit imported the Pennsylvania constitutional concern under Pa. Const. art. I, § 8, that an "independent, detached, neutral magistrate" would make the determination whether probable cause were established rather than act as a rubber stamp for the police. As our high court wrote at length in *Chandler*,

It is not enough, absent exigent circumstances, that a policeman believe the facts he has are probable cause for a search warrant. The people of this state and nation are constitutionally entitled to an independent judicial determination of probable cause before they must open to the policeman's knock at the door in the night. Moreover, that determination must be made before and not after the search. The written affidavit of probable cause simply insures an accurate record of the verified (sworn) facts the issuing authority had when he made his determination before the event. Such a prior reduction to a written affidavit is of course particularly useful since stenographic records are not made in such matters before the district justice. The written affidavit also eliminates the unseemly necessity of calling the judicial officer himself to the stand in a swearing contest with the policeman to determine what each knew when. The facts in the affidavit, however, are not the district justice's judgment. Indeed, they are

only testimonial evidence of the facts themselves.

Reasonable judges and legal scholars may well differ over the technicalities of how best to memorialize the facts the issuer of the warrant had when he issued it and how technical courts should be in reviewing his decision to issue. We believe, however, none ever doubted the necessity of the exercise of judicial discretion.

Both the fourth amendment to the United States Constitution and Article I, Section 8 of our Pennsylvania Constitution prohibit unreasonable searches and seizures. They provide that no warrant shall issue except upon probable cause supported by oath or affirmation, and that the warrant must describe the place to be searched and the person or things to be seized. This constitutional protection against unreasonable searches and seizures is not some new thing produced by recent decisions in the courts. It is rooted in long recognized principles of humanity and civil liberty.

In order to insure the protection of those constitutional provisions both this court and the United States Supreme Court require law enforcement officers to obtain a judicially issued search warrant absent certain exigent circumstances. The Commonwealth has not argued at any stage of these proceedings that it did not have to obtain a warrant for the search of the Chandlers' residence.

...

The point of the fourth amendment which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which

reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.... When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.

The issuing judicial authority, in this case a district justice, has the authority and obligation to draw such reasonable inferences as he will from the material supplied to him by police applying for a warrant and to make a finding on the issue of probable cause. Moreover, the magistrate is free to exact such assurances as he deems necessary to insure that the information on which probable cause is based has been obtained in a reliable way from a credible person.

505 Pa. at 121-23, 477 A.2d at 854-56 (citations omitted) (footnote omitted) (quoting *Johnson v. United States*, 333 U.S. 10, 13-14 (1948)).

In Pa.R.Crim.P. 203(C), the Pennsylvania Supreme Court itself has "exacted the assurances" it deems necessary to insure that the information on which probable cause is based has been obtained in a reliable way from a credible person: Those assurances include, "at a minimum," an audio-visual communication between affiant and magistrate while the facts forming probable cause to justify a search are being presented and sworn to. Especially here where we found from the evidence no prior acquaintance between the affiant and the district judge, the minimum visual contact required by the rule

should have taken place.

This court, in a hearing on a motion for suppression, must hear and view the witnesses, judge their demeanor, and make findings on their credibility, and a reviewing appellate court is bound by our findings if they have support in the record. The judicial authority issuing the original warrant to search, by far the most important actor in the constitutional search-and-seizure process, has at least as much responsibility to assess credibility by any means available, especially when mandated to use such means by our Pennsylvania Supreme Court.

The evidence indicated that the judge dispensed with the video component of Pa.R.Crim.P. 203(C) for reasons unclear. The evidence also indicated the judge never returned the warrant and inventory to this court as required by Pa.R.Crim.P. 210. However, in determining "fault" or "blame" for these violations of our Supreme Court's rules, we also had the testimony of the affiant that as to procuring the search warrant by telephone only, "[W]e have done that in the past" (Hr'g Tr. 88:11-12) and "In the past, Your Honor, we've done it telephonically." (Hr'g Tr. 109:20-21). Obviously, then, since the affiant and Judge Friedenberg were not previously acquainted, the affiant had participated in the past in violations of Pa.R.Crim.P. 203(C) in procuring warrants before other judges. Whether, then, the judge or the police officer should be held responsible in this case for the decision to dispense with the visual communication required by the rule, the fact remains it had been done before — and this court has no insight as to who, the affiant or the district magistrate, might have authorized the violation of the rule on previous occasions.

We have attempted to abide by the Supreme Court's admonitions that violations of its rules concerning search warrants should result in suppression only where fundamental constitutional concerns or "bad faith" are implicated. *See Rucci*, 543 Pa. at 277, 670 A.2d at 1137. We have found that the visual component of Pa.R.Crim.P. 203(C) "implicates," if not outright embodies, the requirement of a detached, neutral magistrate determining probable cause under the Pennsylvania Constitution. The question of "bad faith" is harder to answer. Someone appears to be systematically, or at least repeatedly, violating the rule. The subjective good or bad faith of the officers and judges engaged in the violations, at least beyond the confines of this case, is not in evidence. Under the Pennsylvania Constitution, however, unlike in the federal regime, there is no "good faith" exception to the exclusionary rule. *Torres*, 564 Pa. at 101 & n.9, 764 A.2d at 540 & n.9 (citing *Edmunds*, 526 Pa. at 376, 399, 586 A.2d at 888, 899 (concluding that a "good faith" exception to the exclusionary rule in the state of Pennsylvania would frustrate the privacy guarantees embodied in Article I, Section 8 of the Pennsylvania Constitution)). Moreover, aside from whether the violation of Pa.R.Crim.P. 203(C) occurred in "good faith or "bad faith," certainly there was evidence it was, on some level, "an intentional and deliberate disregard of a provision of the Rule," *Mason*, 507 Pa. at 406, 490 A.2d at 426, which *Mason* indicated could be grounds for suppression even in the absence of a "fundamental" violation.

We acknowledged in our findings and conclusions that there was no case law on whether a violation of Pa.R.Crim.P. 203(C) in terms of a failure to establish visual

communication in the use of "advanced communication technology" in obtaining a warrant was a suppressible violation. (Statement R. Tr. 4.) And it is true that neither party presented us with case law on the issue.

In our independent research in preparing this opinion after rendering our findings and conclusions, we discovered that the Pennsylvania Superior Court in *Commonwealth v. Long*, 786 A.2d 237 (Pa. Super. Ct. 2001), *aff'd per curiam*, 572 Pa. 690, 819 A.2d 544 (2003), had addressed a similar issue. There the Superior Court validated a search warrant authorized over the telephone without visual contact between affiant and magistrate. However, the Superior Court's decision predated the Supreme Court's adoption of current Pa.R.Crim.P. 203(C) in 2002, in which the clear mandate of visual communication was promulgated. Moreover, the Superior Court took pains to point out that the affiant and the district justice in that case knew each other and that the district justice recognized the affiant over the phone. 786 A.2d at 240. Whether *Long* is still good law after the Supreme Court's promulgation of Pa.R.Crim.P. 203(C) & cmt. in 2002 is for the Superior Court, and perhaps ultimately the Supreme Court, to say. We did not find that *Long* altered our fundamental analysis that the procedures employed by the police in obtaining and executing the search warrant in this case provided proper grounds under the law for suppressing the fruits of the search in this case.

Our research also uncovered the federal rule dealing with similar subject matter as Pa.R.Crim.P. 203, Fed. R. Crim.P. 41, which provides that, "In accordance with Rule 4.1, a magistrate judge may issue a warrant based on information communicated by telephone or other reliable

electronic means," Fed. R. Crim.P. 41(d)(3). We believe that, by promulgating a rule that departs from the federal rule by requiring an enhanced form of communication between affiant and magistrate, that is, visual contact, the Pennsylvania Supreme Court, as in its broader and more protective interpretations of Article I, Section 8 of the Pennsylvania Constitution, has chosen to provide greater safeguards in the process of obtaining warrants than exist in the federal system. We found that those safeguards could not be set aside at the discretion of individual police officers in the field or the minor judiciary of Pennsylvania.

## VI. Conclusion

The Commonwealth failed to carry its burden to prove that the fruits of the search of defendant's apartment were not "obtained in violation of [his] rights, or in violation of [the Pennsylvania Rules of Criminal Procedure] or any statute." Pa.R.Crim.P. 581(I). In particular, the police obtained a warrant to search the apartment in violation of Pa.R.Crim.P. 203(C), requiring that,

> Immediately prior to submitting a search warrant application and affidavit to an issuing authority using advanced communication technology, the affiant must personally communicate with the issuing authority by any device which, at a minimum, allows for simultaneous audio-visual communication." During the communication, the issuing authority shall verify the identity of the affiant, and orally administer an oath to the affiant.

Pa.R.Crim.P. 203(C). We found that violation of this rule, which was at the least done deliberately and intentionally if not in classic "bad faith," warranted suppression of the

evidence obtained through use of the warrant, especially in the context of the other perplexing violations of the Pennsylvania Rules of Criminal Procedure that plagued the obtaining, execution, and return, or lack thereof, of the warrant in this case. (Cf. Statement R. Tr. 9:11-16 ("To me it [consent to search] is almost like an afterthought by the police in viewing the sloppy way this case has been presented. If all else fails, let's say we had consent. I find the fact incredible and I find the argument incredible at this stage of the proceeding").)

We respectfully suggest that the honorable Superior Court of Pennsylvania should affirm our decision suppressing the evidence. Alternatively, we suggest the Superior Court remand the case to address whether the "four corners" of the warrant failed to establish probable cause to authorize the search, an argument raised at the hearing on suppression but not explicitly addressed in our findings of fact and conclusions of law under Pa.R.Crim.P. 581(I). *Cf. Johnson*, 315 Pa. Super. at 590-91, 462 A.2d at 749 (remanding case for lower court to address several grounds for suppression not addressed in findings and conclusions including that the search warrant was issued on less than probable cause).